Mary Roberts v. The President, Managers and Company of the Delaware & Hudson Canal Company, Appellants.

*Negligence — Railroads — Grade crossing — "Stop, look and listen" — Proper place to stop — Question for jury.*

In an action against a railroad company to recover damages for the death of plaintiff's husband, it appeared that the deceased on the day of the accident was driving a wagon on a public street which crossed the railroad at a point where there were two tracks. The evidence for the plaintiff tended to show that the view of the track in the direction from which the train approached which struck the deceased was obstructed. A witness for plaintiff whose testimony was contradicted stated that the deceased stopped at a point about thirty feet from the crossing. At this point the view along the track was about sixty-eight feet. At thirteen feet from the crossing the view along the track was six hundred and sixty-five feet, but at this point the safety gates if lowered would have come upon the driver, or between the horses and the driver. The evidence for plaintiff also tended to show that the train was run at a high rate of speed and that the safety gates were up. *Held*, that the case was for the jury.

*Railroads — Negligence — Safety gates.*

Safety gates which should be closed in case of danger, if standing open, are an invitation to the traveler on the highway to cross, and while this fact does not relieve the traveler from the duty of exercising care, it is a fact for the consideration of the jury in determining whether he exercised care according to the circumstances.

Argued Feb. 27, 1896. Appeal, No. 50, Jan. T., 1896, by defendants, from judgment of C. P. Lackawanna Co., Jan. T., 1893, No. 82, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Trespass for death of husband.   Before EDWARDS, J.

At the trial it appeared that on October 18, 1892, Hugh Roberts, plaintiff's husband, while driving a wagon and two horse team over the Carbon street crossing of defendants' railroad in Scranton, was killed by a passenger train coming from the south.   A colored man named Johnson who was driving a wagon near the deceased at the time of the accident testified that the deceased stopped about thirty feet from the crossing. Johnson's testimony was contradicted and his reputation for truth partially impeached.   There was some testimony of Roberts' admission before his death that he had not stopped before driving upon the track.   At a point thirty feet from the crossing a view could be had along the railroad track about sixty-eight feet from the crossing.   At thirteen feet from the crossing the view along the track was six hundred and sixty-five feet, but at this point the safety gates, if lowered, would have come upon the driver, or between the horses and the driver.   The evidence for the plaintiff tended to show that the train was run at a high rate of speed.

The court charged in part as follows :

First of all, did Roberts stop, look and listen on that day? When death occurs from an accident, the presumption of law is that the decedent performed his duty of stopping, looking and listening, but this presumption is slight and can be easily rebutted.   But the plaintiff in this case does not depend upon this presumption alone.   You are to consider all the testimony on this point.   You heard the testimony of Mrs. Coar, and of the colored man, Mr. Johnson.   Mr. Johnson says that Roberts stopped about a minute at a distance of about thirty feet from the track.   You also heard the testimony of Dr. Lowry and Mr. Crippen as to Roberts' declarations in the hospital on the afternoon of the 18th.   The reliability of this testimony, and the credibility of the witnesses, are matters for your consideration.   You have a right to take into consideration the physical and mental condition of Roberts after the accident, and while in the hospital, as well as the credibility of Johnson as a witness.   Witnesses on the stand have said that Johnson's reputation for truth and veracity is bad.   Some of the witnesses refer to a period ten years ago, when he lived in Peckville,

and others to a more recent period. The purpose of this testimony is to affect his credibility as a witness. You are to determine what effect it has upon his testimony. [Several witnesses say that they did not see another wagon at the scene and at the time of the accident, but Mr. Gordon says he saw Johnson there at the scene, although he did not notice the wagon.] [8] In weighing this testimony you should take a reasonable view of all the events connected with the accident, the excitement incident thereto, the ability of the several witnesses to observe the surroundings, the accuracy of their recollection, and their credibility as witnesses.

If you should come to the conclusion that Roberts did not stop to look and listen that day, then that would be the end of the case, and your verdict should be for the defendants. But if you should come to the conclusion that he did stop as the law requires, then the next question is, did he stop in the proper place under all the circumstances.

If a traveler on the highway in approaching a crossing, either on foot or in a wagon, stops where it will do him no good, and will not enable him to protect himself against an approaching train, he does not stop in the right place. There is considerable testimony on this branch of the case. Several measurements have been made so as to determine the line of vision up the track in a northerly direction from several points on Carbon street. These measurements are not exactly the same. The two surveyors, Mr. Bartl and Mr. Mason, differ to some extent. The view up the track has been given you from the distance of thirteen, twenty, thirty, forty and fifty feet from points on Carbon street. I need not repeat the figures to you, but I say to you that a traveler is not required to get into a place of danger in order to perform his duty. [If Roberts had stopped thirteen feet from the track, according to the testimony of Mr. Mason, the gates, if lowered, would have come either on the driver or between the horses and the driver. Of course I refer to the east rail of the northbound track. The law does not require this, but the traveler must stop at the best place for his own protection under all the circumstances.] [9]

Did Roberts stop at the proper place? It is for you to decide from the evidence as to the place where he stopped, whether it was twenty feet or thirty feet or forty feet or fifty

feet, and in deciding this you have a right to consider all the surrounding circumstances, as they have been disclosed to you in the testimony of the witnesses, and as they are indicated in the maps and photographs received in evidence. [You are to consider the nature of the crossing, the obstructions in the shape of buildings to the line of vision, the speed at which the train approached the crossing, the fact that the gates were up, the conduct of Roberts and the character of his team, in deciding whether or not the decedent stopped at the proper place.] [10]

Defendants' points and answers were, among others, as follows:

5. If by reason of buildings or other obstructions the track cannot be seen, before entering upon it, then the law requires the person to go before his team, under ordinary circumstances, to see whether the track is clear or not. *Answer:* That is true in some cases, but it is for you, gentlemen of the jury, to ascertain whether the decedent in this case could not have a proper view of the track without getting out of the wagon. With this explanation the point is affirmed. [1]

7. That it being in evidence on the part of the plaintiff and undisputed, that when Hugh Roberts, the decedent, came within thirteen feet of the north bound track of the railroad he could see up the railroad a distance of about seven hundred feet in the direction in which the train which struck his wagon was coming, it was his duty to have there stopped, looked and listened, as he was driving at a slow rate, his team was a very quiet team and not afraid of cars at all, and at that point he would be twenty-seven feet from the center of the track on which he was struck, and it being also in evidence on the part of the plaintiff that the train was not coming at a rate of speed exceeding fifteen miles an hour, the train at that rate would necessarily be within the line of his vision and in plain sight before he attempted to cross their track, and as he failed to do this at the only place where stopping and looking and listening would be of any assistance to him he was guilty of contributory negligence in driving directly upon the track in plain view of the approaching train which met him as he reached the south bound track. *Answer:* As to the place where Roberts should have stopped, the character of the team he was driving, the rate of speed at which the train was running, the point at which the

train would reach the line of decedent's vision, and as to whether he was guilty of contributory negligence—these are all questions which I have submitted to you, gentlemen of the jury. It being a matter for the jury I refuse to affirm this point. [2]

8. That the fact that the train causing the accident was in plain sight of Hugh Roberts during the time he was passing over a distance of twenty-seven feet before he reached the south bound track, conclusively rebuts the presumption that he fulfilled the requirements of the law of stopping, looking and listening at the only place where he could get a view of the track and where stopping, looking and listening would be effective. *Answer :* This point is refused. It is a question for the jury. [3]

9. That where a witness is called to testify to a material fact and the character for truth of such witness is successfully impeached, the jury would not be warranted in considering the testimony of such a witness, unless he was corroborated as to such material fact. *Answer :* This point is correct, but is not applicable, except where the character of the witness is successfully impeached; but the credibility of the witness is still for the jury. [4]

10. That it being undisputed under the evidence that Hugh Roberts, the decedent, from a point twenty-seven feet from the center of the track, where he was struck, could have seen up the track in the direction of the approaching train for a distance of six or seven hundred feet, and drove slowly upon the south bound track, where he met the locomotive, which was in plain view during his passing over all this distance, he was guilty of contributory negligence, and the plaintiff cannot recover. *Answer :* I refuse to affirm this point. [5]

11. That upon the whole evidence in this case the plaintiff is not entitled to recover. *Answer :* This point is refused. [6]

The plaintiff presented, among others, this point:

2. Safety gates which should be closed in case of danger, if standing open, are an invitation to the traveler on the highway to cross, and while this fact does not relieve him from the duty of exercising care, it is a fact for the consideration of the jury in determining whether he exercised care according to the circumstances. *Answer :* I affirm this point. [7]

Verdict and judgment for plaintiff for $8,302.88. Defendants appealed.

*Errors assigned,* among others, were (1–10) above instructions, quoting them.

*W. H. Jessup,* with him *Horace E. Hand* and *W. H. Jessup, Jr.,* for appellants.—It was the duty of the deceased to stop at a proper place: Pa. R. R. v. Beale, 73 Pa. 504; Ellis v. R. R., 138 Pa. 506; Ely v. R. R., 158 Pa. 233; Whitman v. Pa. R. R., 156 Pa. 175; Urias v. R. R., 152 Pa. 326; Gangawer v. P. & R. R. R., 168 Pa. 265; Kraus v. R. R., 139 Pa. 279; Omslaer v. Traction Co., 168 Pa. 519; Beynon v. Pa. R. R., 168 Pa. 642; Myers v. B. & O. R. R., 150 Pa. 386; Pa. R. R. v. Mooney, 126 Pa. 244.

That under the evidence it was the duty of the court to pronounce the judgment of law and to take the case away from the jury is clearly shown by the following cases: Holden v. Pa. R. R., 169 Pa. 1; Mead v. Conroe, 113 Pa. 220; Bank v. Tinker, 158 Pa. 17; Yingst v. Ry. Co., 167 Pa. 439.

*J. Alton Davis* and *Everett Warren,* with them *John R. Edwards* and *Henry A. Knapp,* for appellee.—The case was for the jury: Pa. R. R. v. Beale, 73 Pa. 504; Penna. R. R. v. Ackerman, 74 Pa. 265; Neiman v. D. & H. C. Co., 149 Pa. 92, Davidson v. R. R., 171 Pa. 522; Smith v. R. R., 158 Pa. 82; McNeal v. R. R., 131 Pa. 184; R. R. v. Frantz, 127 Pa. 297.

Roberts' contributory negligence was not shown by the mere fact of the accident: Ellis v. R. R., 138 Pa. 506; Link v. R. R., 165 Pa. 75.

Where the evidence shows that the stopping was at a place where no view can be had, or where, at a place proper under ordinary circumstances but not continued sufficiently long to have a temporary obstruction removed, it follows that the stopping was merely perfunctory and the contributory negligence should be declared as matter of law: Hoffmeister v. R. R., 160 Pa. 568; Haverstick v. R. R., 171 Pa. 102; McGill v. R. R. Co., 152 Pa. 331; Groner v. R. R. Co., 153 Pa. 390; Newhart v. R. R. Co., 153 Pa. 417.

Safety gates which should be closed in case of danger if standing open are an invitation to the traveler on the highway to cross, and while this fact does not relieve him from the duty of exercising care, it is a fact for the jury in determining whether

he exercised care under the circumstances : Matthews v. R. R., 161 Pa. 28; R. R. v. Killips, 88 Pa. 405.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 5, 1896 :

In any view that can be reasonably taken of the testimony that was properly before the jury, this was clearly a case for them on questions of fact involving the defendant company's negligence, and also the alleged contributory negligence of plaintiff's husband, since deceased. The testimony, covering over three hundred and fifty pages in all, is too voluminous to admit of anything more than a general reference to its character and effect. A careful examination of it, as a whole, has convinced us that any attempt to do more would subserve no useful purpose. Without, therefore, referring even to its salient points, relating to said questions of negligence and contributory negligence, it is sufficient to say, it was of such a character that it became the manifest duty of the learned trial judge to submit it to the jury, with proper instructions as to the law applicable to the facts that might be found by them therefrom. That was accordingly done in a clear, well-guarded and adequate charge, in which we find no substantial error. The controlling questions of fact, on which plaintiff's right to recover depended, were definitively settled by the verdict in her favor. It necessarily implies a finding to the effect that the defendant company was guilty of negligence which was the proximate cause of the death of plaintiff's husband, and that no negligent act of his contributed thereto. That such a finding was fully warranted by the testimony cannot be doubted.

It follows from what has been said that the judgment should not be disturbed. A careful consideration of the record with reference to each of the specifications of error has satisfied us that neither of them should be sustained. The first challenges the correctness of the court's answer to defendant's fifth point. In view of the evidence before the jury, there was no error in saying that it was for them " to ascertain whether the decedent in this case could not have a proper view of the track without getting out of the wagon." An unqualified affirmance of the point would have been error.

The next five specifications complain of the refusal of the court to affirm defendant's points recited therein respectively.

We find no error in the learned judge's answers to either of these points; nor do we think there is anything in them that requires discussion.

The subject of complaint in the seventh specification is the affirmance of plaintiff's second point, viz: "Safety gates which should be closed in case of danger, if standing open, are an invitation to the traveler on the highway to cross, and while this fact does not relieve him from the duty of exercising care, it is a fact for the consideration of the jury in determining whether he exercised care according to the circumstances." It requires no argument to show that this proposition is correct, especially in view of the evidence in this case, and hence there was no error in affirming it.

Considered in connection with other portions of the general charge, we fail to discover any error in the excerpts recited in the ninth and tenth specifications; nor are we convinced that there was any error in overruling defendant's motion to strike out the evidence of Thomas Cordon, referred to in the eleventh specification.

Judgment affirmed.