TILLIE C. SWANSON, ADMINISTRATRIX, PLAINTIFF IN ERROR, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY ET AL., DEFENDANTS IN ERROR.

Argued June 28, 1899—Decided November 20, 1899.

The neglect of a railroad company to give warning of the approach of its trains to a highway crossing, even when so gross as to amount to a declaration that the way is safe for travelers upon the highway, does not absolve a person about to cross the tracks from the duty of making an independent observation for the purpose of ascertaining whether or not a train is coming to the crossing; and failure in that regard is, ordinarily, a failure to exercise that reasonable degree of prudence which the law requires of all persons when approaching these places of known danger.

On error to the Supreme Court.

For the plaintiff in error, *Edmund Wilson* and *Flavel McGee.*

For the defendants in error, *William A. Barkalow* and *Charles H. Ivins.*

The opinion of the court was delivered by

GUMMERE, J.   This action was brought against the Central Railroad Company of New Jersey and the New Jersey Southern Railway Company to recover damages for causing the death of the plaintiff's intestate at a railroad crossing at Seabright, at which place he was struck down and killed by a train of the former company which was running over the latter company's railroad.

The following is a recital of the salient facts proved at the trial :

The deceased, Andrew P. Swanson, while crossing, on foot, over the tracks from east to west, was struck by a train southbound, running on the most westerly track.   A train, northbound, on the easterly running track caused him to halt before crossing.   Immediately upon the passing of the northbound train he walked in behind it and was struck by the other train.   The view to the north of a person approaching the crossing from the east was obstructed by freight cars standing on a siding easterly of the northbound track.   There were eight feet and nine inches between the side track and the northbound track.   The northbound track is five feet wide, and between the northbound and southbound track there were seven feet and five inches, making a total of twenty-one feet and two inches between the side track, upon which the cars stood, and the southbound track.   After passing the freight cars there was an unobstructed view to the north, except so far as the northbound train shut it off, down to Seabright station—1,850 feet.   The view to the south was unobstructed for a much longer distance.

It was the custom to maintain gates at this crossing in the summer time, which were taken down and put away in the winter.   They were in operation at the time of the accident, and had been for several weeks.   They had, however, got out of order on the day before and were not in actual use on the day of the accident, but instead the gateman was stationed at the crossing with a flag. · Immediately before the happening of the accident, and while the northbound train was ap-

proaching and passing, the flagman stood at the crossing waving his flag. As soon as that train passed he ceased waving the flag and held it over his shoulder, retaining, however, his position upon the crossing. No audible signal of the approach of the southbound train was given, either by the blowing of a whistle or the ringing of a bell, in compliance with the statutory requirement. At the close of the plaintiff's case a nonsuit was ordered, the proofs showing, in the opinion of the trial judge, that the accident which resulted in the death of her intestate was partly due to his own negligence. The propriety of this judicial action is challenged by the writ of error.

That it is the duty of the traveler upon a highway, before crossing a railroad, to look up and down the tracks and also listen for approaching trains, and that his failure to do so is such negligence as will prevent a recovery if he is run down at the crossing, has been declared by this court in a long line of cases. So, too, it is entirely settled that if his ability to see or to hear an approaching train is temporarily diminished or destroyed by obstructions or disturbances which are transient in their nature, reasonable prudence requires him to wait until such obstructions or disturbances have disappeared and his senses have again become efficient to warn him of danger before attempting the crossing. *Merkle* v. *New York, Lake Erie and Western Railroad Co.*, 20 *Vroom* 473; *West Jersey Railroad Co.* v. *Ewan*, 26 *Id.* 574; *Pennsylvania Railroad Co.* v. *Pfuelb*, 31 *Id.* 278; *S. C. on error*, 32 *Id.* 287; *Central Railroad Co.* v. *Smalley*, 32 *Id.* 277.

It is manifest from the facts already stated that if the deceased had waited, after stepping out from behind the freight cars which stood upon the side track, until the northbound train had passed far enough away from the crossing to enable him to see and hear the coming southbound train, and had then used his eyes and ears for his own protection, this accident would never have occurred. That he could have remained in the place indicated with perfect safety is not disputed. The space between the side track and that used by

northbound trains was twenty-one feet; assuming that the cars on these two tracks had the ordinary overhang, there would have been a space of at least sixteen feet between the passing train and the freight cars.  His neglect to observe this precaution for his safety which the law imposes upon every person about to cross over the tracks of the railroad, is sought to be justified by the conduct of the defendant's flagman in ceasing to wave his flag, after the passage of the northbound train, and resting it over his shoulder, which action it is said was tantamount to a declaration on his part that the way was safe.

I am unable to perceive why the mere shifting of his flag, by the flagman, from one position to another is to be construed into a declaration that the way is safe, while the flagman continues to remain upon the crossing.  But conceding, for the purposes of the case, that this action has all the significance which has been attributed to it by counsel for the plaintiff in error, his case is not benefited thereby.  What the flagman's conduct amounted to, if counsel's contention be sound, was a failure to give warning of the approach of the train.  This is just what the gateman fails to do when he neglects to lower his gates, or the engineer and fireman when they neglect to blow a whistle or ring a bell.  But each of the decisions hereinbefore adverted to rests upon the ground that the passenger on the highway is not justified in relying solely upon the action or nonaction of the employes of the company whose duty it is to give notice of the approach of trains to a crossing.  Self-preservation requires independent observation on the part of the person about to cross the tracks. The declaration of the company's employes that the way is safe does not absolve from the duty of making such observation, and failure in that regard is ordinarily a failure to exercise that reasonable degree of prudence which the law requires of all persons approaching these known places of danger.

Extraneous circumstances have in some cases been considered to have excused the traveler upon the highway from the observance of the rule of caution which requires him to look

and listen when about to cross over the tracks of a railroad. *West* v. *New Jersey Railroad Co.,* 3 *Vroom* 91 ; *S. C. on error,* 4 *Id.* 430 ; *Berry* v. *Pennsylvania Railroad Co.,* 19 *Id.* 141, are examples of such cases. But such circumstances excuse only when they are of a character to distract the attention of a reasonably prudent person from the danger to be apprehended from an approaching train.

No such excusing circumstances are shown to have existed in the case in hand. The judgment should therefore be affirmed.

*For affirmance* — THE CHIEF JUSTICE, DEPUE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, LUDLOW, BOGERT, NIXON, HENDRICKSON. 10.

*For reversal*—None.