Filed April 18, 1889.

---

No. 14,473.

## The Pennsylvania Company v. Stegemeier, Administratrix.

DEMURRER TO EVIDENCE.—*Effect of.*—By demurring to the plaintiff's evidence the defendant admits the truth of all the evidence adduced by the plaintiff, and all inferences that may reasonably be drawn from it, and withdraws from consideration all favorable evidence, except upon points where there is no conflict.

RAILROAD.—*Street Crossing.*—*Failure to Close Gates or Give Warning.*—*Negligence.*—Where a railroad company, in pursuance of a city ordinance, has erected gates and stationed a watchman at a street crossing, a traveller who approaches the crossing and finds the gates open and receives

The Pennsylvania Company v. Stegemeier, Administratrix.

no warning from the watchman, has a right to assume that there are no approaching trains, and if, acting upon this assumption, he enters upon the crossing and is instantly confronted by trains going in opposite directions, and in the confusion caused by the unexpected danger into which he is thus led is struck and killed, the railroad company is liable.

From the Allen Circuit Court.

*J. Brackenridge* and *M. L. Graff*, for appellant.

*H. Colerick*, *W. S. Oppenheim* and *P. B. Colerick*, for appellee.

ELLIOTT, C. J.—The appellee, in her complaint, alleges that the appellant was required by an ordinance of the city of Fort Wayne to keep a flagman to give warning to travellers at the crossing of its railroad track and Hanna street, a public street of that city; that it had erected gates at the crossing, and had stationed a flagman there; that appellee's intestate went upon the crossing and was struck and killed by one of the appellant's trains; that the gates were open at the time, and the flagman was in his shed; that no warning was given, and that the intestate was free from contributory negligence.

The appellant demurred to the evidence. The rules upon the subject of demurrers to the evidence are well settled, and by them this case must be determined. By demurring to the evidence the appellant admitted the truth of all of the evidence adduced by the appellee, and all inferences that might reasonably be drawn from it, and withdrew from consideration all favorable evidence, except upon points where there was no conflict. *Palmer* v. *Chicago, etc., R. R. Co.*, 112 Ind. 250, and cases cited. The question, therefore, as the record presents it, is this : Does the evidence, considering only that which is favorable to the appellee, and awarding her the benefit of all reasonable inferences for which it supplies a foundation, establish the cause of action stated in her complaint?

The appellee testified that she was the widow of the in-

testate, gave the names and ages of his children, stated his business and the time of his death, and said that he was forty years of age. She also testified that he had lived in Fort Wayne for many years, not far from the crossing where he was killed. John Wingate testified that he saw the deceased running down Hanna street about daylight on the morning of March 2d, 1886, and that he saw him on the crossing, and saw, also, the head-light of an approaching train not more than six or eight feet distant from him. The witness then lost sight of the deceased, and after the train passed he saw the switchman come out of his shed and walk back up the track, and he, the witness, joined him. They found the deceased lying not far from the track, and, taking him up, they carried him to the sidewalk. Louis Deggetts testified that the name of the appellant's watchman at the Hanna street crossing on the 2d of March, 1886, was Patrick Keith, and that at the time the appellant's train passed on that morning Keith was in his shed. Charles Newell, in his testimony, said that he was the engineer of the No. 5, or limited, train of the appellant; that the gates of the crossing were up when his train passed on the morning of the 2d of March. This witness also testified that he saw a man on the track looking up at a train, and that he gave three sharp blasts of the whistle; that he did not again see him, nor did he know that the man was hurt until some minutes afterwards, when he found a man's cap on his engine. The crossing was proved to be within the corporate limits of the city of Fort Wayne, and an ordinance of the city was given in evidence which contained a provision requiring the appellant to keep a flagman at the crossing of Hanna street. It was also proved that train No. 5 passed that crossing about the time the appellee's intestate was struck, that the gates had been in use at the crossing for four or five years before the accident, and the manner in which they were operated was explained. It was admitted that the deceased was struck by train No. 5, and that it was one of the appellant's trains. There was also ev-

idence showing that train No. 5 was moving west on the appellant's track, and that train No. 6, belonging to the Wabash Company, was at almost the same instant moving to the east on a track a few feet distant from that on which the appellant's train was moving. These tracks were laid from east to west, and were crossed by Hanna street, running north and south, at right angles.

The appellant's counsel say in argument that " It was the duty of the company to keep a flagman at this crossing, and it was also the duty of the defendant to have the gates down when a train was passing over the crossing.. The evidence shows that the flagman was not at his post, and that the gates were not down when the train, whose engine it was claimed killed the intestate, was about to pass over the crossing. It may, therefore, on demurrer to the evidence, be assumed that the company was guilty of negligence." This statement of appellant's counsel narrows the investigation to a single question, and that is this : Is there evidence from which it may be reasonably inferred that the appellee's intestate was not guilty of contributory negligence ?

The appellant's counsel, it is true, argue that there is no evidence that Stegemeier was struck by train No. 5, but in assuming that there was no such evidence counsel are in error, for it was expressly admitted on the trial " that the track that train No. 5 was running on at the time (the time of this accident) was the property of the defendant, and that the said train was operated by the Pennsylvania company, the one that hit William Stegemeier."

The appellant was in the wrong in not obeying the ordinance of the city. This is, as we have seen, conceded by counsel, and there can be no doubt that the proposition we state embodies the law. *Wanless* v. *N. E. R. W. Co.*, L. R. 6 Q. B. 481 (L. R. 7 H. L. Cas. 12); *Railway Company* v. *Schneider*, 45 Ohio St. 678; *Baker* v. *Pendergast*, 32. Ohio St. 494. An ordinance of a municipal corporation is a local law, and binds persons within the jurisdiction of:

the corporation. *Town of Elwood* v. *Citizens' Gas, etc., Co.* 114 Ind. 332 ; *Blanchard* v. *Bissell,* 11 Ohio St. 96 ; *State* v. *Lee,* 4 Crim. Law Mag. 79, 81 ; 1 Dill. Mun. Corp. (3d ed.),sec. 307 ; *Madison, etc., R. R. Co.* v. *Taffe,* 37 Ind. 361 ; *Pennsylvania Co.* v. *Hensil,* 70 Ind. 569 ; *Simons* v. *Gaynor,* 89 Ind. 165.

The effect of the appellant's failure to obey the local law extends much farther than the question whether it was or was not guilty of actionable negligence, for it exerts an important influence upon the question whether the intestate was or was not guilty of contributory fault. The evidence shows that he was, and long had been, a citizen of Fort Wayne ; and it also shows that he was acquainted with the Hanna street crossing. The reasonable inference, therefore, is that he knew that when trains were about to pass the crossing the gates were shut down, or warning given by the flagman. But more than this, he had a right, within reasonable limits, to act upon the presumption that the company had done its duty and obeyed the law. He had no right, however, to recklessly omit to use his senses of sight and hearing, and rely entirely upon this presumption ; but he did have a right to presume that there were no approaching trains. But here there is no evidence that he did not use his senses, as a prudent man would have done under the circumstances in which he was placed ; on the contrary, there is evidence from which it may be reasonably inferred that he was not guilty of contributory negligence. It is a familiar rule that a man brought into danger by the wrong of another is not bound, when confronted by sudden and unexpected peril, to act with coolness and deliberation. The law recognizes the influence which unexpected exposure to danger exerts upon ordinary men, and does not demand of them the prudence and care that men would exercise under other circumstances. 2 Shear. & Redf. Negligence (4th ed.), section 477. Here the failure of the company to obey the local law gave the deceased assurance that the tracks were

clear and the crossing safe; but when he had gone upon the crossing he found two trains rapidly approaching him, one from the east and one from the west, and the fact that he met his death by being struck by one of them does not authorize the inference that he was guilty of such contributory negligence as bars a recovery, for he was thrown off his guard and exposed to a sudden danger that he had a right to expect would not be encountered. If he had carelessly gone upon the track, or had gone upon the track at a crossing where there were no gates or no flagman required, we should have a very different case; but he was not negligent in going upon the tracks, because he was justified in believing that there were no approaching trains. It was the act of the appellant, and not his own, which created this belief. It was through no fault of his that he entered a place of danger. The case at bar is to be discriminated from those in which the injured person enters upon a track where there is no affirmative assurance of safety, for here the fact that the gates were up and no warning given by the flagman was an affirmative assurance of safety, upon which a citizen might act without being chargeable with negligence. This case is essentially unlike one where the only negligence is the mere failure to sound a whistle or ring a bell, for here the assurance was that there was no train near the crossing. This assurance constitutes the distinctive feature of this class of cases, for the reason that it is in the nature of an invitation to cross, and of a declaration that there are no approaching trains. This essential feature clearly marks the case and distinguishes it from such cases as *Chicago, etc., R. W. Co.* v. *Hedges, ante,* p. 5.

The case before us belongs to the class in which railroad companies are held responsible because they put the traveller off his guard and lure him into danger. The general rule upon this subject is thus stated by one of our text-writers: "Where a person is ignorant of the location of a crossing, or where the circumstances are such as to mislead him as to

the necessity for looking or listening for the approach of a train, he can not as a matter of law be said to be guilty of negligence *per se* for neglecting to do so. Thus, where, as is the case in some localities, the company maintains gates at certain crossings, which are closed at the approach of a train, he has, if they are open when he is near the crossing, a right to rely upon it that it is safe for him to cross, and if the company neglects its usual duty, and does not close them, or otherwise notify travellers of the approach of a train, it can not relieve itself from liability simply because the traveller neglected to look or listen for himself." 2 Wood Railway Law, 1328.

It is said in another text-book, that: " Yet, where a railroad company is under no original obligation to station a flagman at a particular crossing, if it has done so for many years, travellers have a right to presume, in case of his absence, that the road is clear. So they have, where the company is legally bound to keep a man at the crossing, though the obligation be created only in favor of other persons." 2 Shear. & Redf. Negligence, section 466.

In the case of *Railway Co.* v. *Schneider*, 45 Ohio St. 678, the Supreme Court of Ohio said : " It is the business of the gatemen to watch the track, and when clear, to open the gates for persons using the street to cross ; and, upon the approach of locomotives or trains, to close the gates and prevent persons and vehicles from crossing until · the tracks are again clear. To persons in the street who are approaching the railroad tracks with a view to crossing, an open gate is notice that the track is clear, and that it is safe to cross." It was said, by TREAT, J., in *Central Trust Co.* v. *Wabash, etc., R. W. Co.*, 27 Fed. Rep. 159, that: "At the crossings in a populous city, where gates and watchmen are provided, passengers and pedestrians have a right to suppose when the gates are opened, and no warning to the contrary given by the watchmen, that they can proceed with entire safety. If accidents should happen through the gross negligence of the manage-

ment of the gates by the watchmen connected therewith, *prima facie* the railway company must answer for the damages sustained. Trifling matters as to the movements of the passenger or pedestrian in crossing, under such circumstances, can not exonerate the railway company, whose duty it was to protect said crossing, and give warning as to the safety thereof." In *North Eastern R. W. Co.* v. *Wanless*, L. R. 7 H. L. Cas. 12 (L. R. 6 Q. B. Div. 481), it was said : " It appears to me that the circumstance that the gates at this level crossing were open at this particular time, amounted to a statement, and a notice to the public, that the line at that time was safe for crossing, and that any person who, under those circumstances, went inside the gates, with the view of crossing the line, might very well have been supposed by a jury to have been influenced by the fact that the gates were open. Then, when inside the gates, the boy who in this case was injured, saw what was inconsistent with the gates being open, namely, he saw one train passing, and it may very possibly be the case that that circumstance embarrassed him, and that his eyes and attention being fixed upon that particular train, when it passed out of the way, he failed to see the other train." The reasoning of the judge from whom we quote forcibly applies to this case. The deceased was not simply thrown off his guard, but he was also assured that there were no approaching trains, and this assurance dispensed with the vigilance that under other circumstances would have been required of him ; this assurance, too, completely relieved him from the imputation of negligence in going upon the tracks, and the evidence of the approach of the trains from opposite directions an instant after he entered on the tracks, supplies sufficient ground for the inference that his failure to see and avoid the train was attributable to the confusion produced by the sudden peril to which the wrong of the company had inexcusably exposed him. There are many decisions supporting the doctrine we have asserted, but we deem it necessary to cite only a few of them. *Chicago, etc., R. R. Co.*

v. *Boggs*, 101 Ind. 522 ; *Greany* v. *Long Island R. R. Co.*, 101 N. Y. 419 ; *Owen* v. *Hudson, etc., R. R. Co.*, 35 N. Y. 516 ; *Beisiegel* v. *New York, etc., R. R. Co.*, 34 N. Y. 622 ; *Dolan* v. *Delaware, etc., Canal Co.*, 71 N. Y. 285 ; *Chicago, .etc., R. R. Co.* v. *Hutchinson*, 120 Ill. 587.

Judgment affirmed.

Filed April 18, 1889.