## DELAWARE, L. & W. R. CO. v. WELSHMAN.

(Circuit Court of Appeals, Third Circuit. December 9, 1915. On Petition for Rehearing, January 31, 1916.)

### No. 1969.

1. RAILROADS ⬤⟿328—CROSSING ACCIDENTS—DUTY TO STOP, LOOK, AND LISTEN.

It is the positive duty of an automobile driver, approaching railroad tracks where there is a restricted vision, to stop, look, and listen at a time and place where stopping, looking, and listening will be effective.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1057–1070; Dec. Dig. ⬤⟿328.]

2. RAILROADS ⬤⟿330—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE—RAISING GATES.

The raising of railroad crossing gates is an invitation to travelers to cross the railroad tracks, but is an invitation only to cross with due care, and the traveler must use his sight, hearing, and such other factors of safety as the situation and circumstances permit and require.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1071–1074; Dec. Dig. ⬤⟿330.]

3. RAILROADS ⬤⟿350—CROSSING ACCIDENTS—ACTIONS—QUESTIONS FOR JURY.

An automobile driver stopped about 15 feet north of a railroad crossing where the crossing gates were down, at which point he could not see the approach of trains. As soon as a passing train had passed the gates were raised, and he proceeded to cross without again stopping until struck by an east-bound train on the south track when almost across. Photographs were in evidence indicating that as he passed the north gate his view of trains on the south track was shut off by a gradually rising bank extending to an overhead crossing 350 feet away, and it appeared that beyond such crossing the tracks curved to the north. The crossing watchman testified that trains could not be seen beyond the overhead crossing. *Held*, that it was a question for the jury whether he was negligent in failing to stop before reaching the track, and whether such negligence contributed to the accident.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ⬤⟿350.]

### On Petition for Rehearing.

4. COURTS ⬤⟿376—UNITED STATES COURTS—CONFORMITY TO STATE PRACTICE.

The New Jersey crossing statute, providing that whenever any railroad shall have installed any safety gates, bell, or other device at any crossing, or placed a flagman at such crossing, persons approaching it may assume that the warning appliances are in good order and will be properly operated, unless a notice to the contrary is conspicuously posted, or that the flagman will guard such crossing with sufficient care, and that, in any action for injuries at such a crossing, no plaintiff shall be barred of the action because of the failure of the person injured to stop, look, or

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

listen, does not require every case of injury at a protected grade crossing to be submitted to the jury, but simply declares a rule of evidence to which the federal courts in New Jersey should conform.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 984; Dec. Dig. ☞376.]

In Error to the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Action by Alice B. Welshman, executrix of George O. Welshman, deceased, against the Delaware, Lackawanna & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Frederic B. Scott, of New York City, for plaintiff in error.

W. Locke Rockwell, of Newark, N. J., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below Mrs. Alice B. Welshman, executrix of Dr. George O. Welshman and a citizen of New Jersey, brought suit and recovered a verdict against the Delaware, Lackawanna & Western Railroad Company, a corporate citizen of Pennsylvania, for damages based on the death of Dr. Welshman through the defendant's alleged negligence. The defendant, on entry of judgment, sued out this writ. While there are 16 formal assignments of error, they finally narrow to the court's alleged error in refusing defendant's request for binding instructions. Whether the court erred depends on the answer to two questions: First, was there evidence tending to show defendant was negligent? and, second, should the court, as a matter of law, have held that Dr. Welshman was guilty of contributory negligence?

Confining ourselves to such testimony as bears on these questions, we may say the proofs on behalf of the plaintiff tended to show that on the afternoon of the accident Dr. Welshman drove his automobile to the north side of defendant's Grove street double-track crossing in East Orange, N. J. The crossing was protected by safety gates operated by a watchman, who stood on the southwest corner of the crossing. The watchman was apprised of the approach of trains by the ringing of a bell in his watch box and by a color change in an indicator, also in the box. The bell and indicator were actuated electrically by an approaching train when 2,000 feet distant from the crossing. All the apparatus was in order. Dr. Welshman stopped his car about 15 feet from the gates, which at that time were down to allow a westbound train to pass. As soon as this train passed the gateman raised the south and then the north gate. Thereupon Dr. Welshman started his machine at moderate speed to cross the tracks. Heavy wagons crossed at the same time. About the time the doctor reached the west-bound track the gateman, who had discovered from the bell and signal that an east-bound express then due was coming, dropped the north gate, but kept the south gate up and cried and waved to the doctor to hurry forward. Whether the cry was heard or heeded does not appear, but the doctor proceeded slowly across. He almost reached

the other side, but the hinder part of his rear wheel was caught by the locomotive, his car demolished, and he himself instantly killed.

The court submitted to the jury the question of the defendant's negligence in three aspects: First, failure to ring a bell a proper statutory distance from the crossing; second, the alleged failure of the engineer, after he saw Dr. Welshman in danger, to take proper steps to check or stop the train; third, the alleged negligence of the watchman in operating the gates. These questions were all submitted to the jury in terms to which no objection is made, provided submissible evidence on those several questions existed. Without reciting such evidence it suffices to say it is found in the record, the trial judge properly submitted it to the jury, and he committed no error in refusing to give binding instructions for the defendant on the ground of no negligence by defendant being shown. It follows, therefore, the judgment must be affirmed, unless the court erred in refusing to further hold as a matter of law that Dr. Welshman was guilty of contributory negligence.

[1] We deem it proper to here note that this court has no purpose to recede in any respect from the principle laid down in New York Cent. & H. R. Ry. Co. v. Maidment, 168 Fed. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794, and restated in Brommer v. Penna. R. R. Co., 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924, in reference to automobile drivers making dashes over crossings without taking proper precautions. In the former case we said:

"The duty of an automobile driver, approaching tracks where there is restricted vision, to stop, look, and listen, and to do so at a time and place where stopping and where looking and where listening will be effective, is a positive duty, and these safeguarding steps the plaintiff failed to take. He stopped where stopping served no purpose, and failed to stop where stopping would have disclosed danger. He made chance, and not sight, the guaranty of his safety. We are clear he was guilty of contributory negligence, and the judgment below should be reversed."

[2] The facts in those cases were so different that, apart from their general principle, those decisions are not applicable to the case in hand. Here Dr. Welshman did not attempt to cross the track until the gates were raised by a watchman, who was presumably competent, and who was in a better position than the doctor to see an approaching train. The railroad having indicated its estimate of the safety of the situation by raising the gates, and Dr. Welshman having acted accordingly, it is manifest that this court would not be justified in holding that in accepting this invitation to cross the decedent was so heedless of his own safety that, as a matter of law, he was guilty of contributory negligence. On the contrary, we think the experience and judgment of everyday life is that the raised gate is an index of the railroad's view that crossing may be safely made, and that a crosser may reasonably accept it as an invitation to go forward. And such have been the adjudged cases. We avoid needless presentation of other decisions by referring to a single well-considered case, Erie Company v. Schultz, 183 Fed. 674, 106 C. C. A. 23, where the Circuit Court of Appeals of the Sixth Circuit collected the authorities and said:

"If a flagman beckons the waiting team driver to come ahead, or if a towerman raises the lowered gates, in either case there is a representation to the driver that there is no approaching train within striking distance. The driver who moves forward under this representation cannot be held to the same strict rule of instant and constant and extreme vigilance which is enforced against one who crosses in sole reliance on his own judgment."

Of course, the raising of the gates did not make the railroad either an insurer or the sole guardian of the crosser's safety. The duty of care, of the use by the crosser of sight, hearing, and such other factors of safety as the situation and circumstances permitted and required of one intent on his own safety, still rested on him. The raised gate is not an invitation to cross without care, but an invitation to cross with the use of all care the situation permits. To hold otherwise would be to make gates and flagman harmful creators of negligence instead of helpful aids to safety. The crossing driver must bear in mind that the flagman is human and therefore liable to make mistakes, and that in so important a thing as his own safety and life the driver must not intrust them to any one man, but that common sense as well as common law require him, notwithstanding the invitation, to himself use all possible care to aid in a safe crossing. If the driver does not contribute such care, he contributes lack of care, and lack of care is contributory negligence. To this reciprocal duty of care which the law casts upon the crosser who accepts the invitation of a raised gate, the court below called the jury's attention, saying:

The deceased "owed to the railroad company a reciprocal duty, namely, to take care to protect himself from danger. The measure of duty of care on his part was to exercise ordinary and reasonable care; that is to say, such care as an ordinarily prudent person would have exercised under the same circumstances."

And the verdict must be accepted as a finding that the deceased took such possible care as the situation called for.

[3] That the question of Dr. Welshman's contributory negligence was peculiarly one of disputed facts and disputable inferences, and therefore for a jury, is apparent when the situation and surroundings are understood. He came to the crossing and stopped about 15 feet from the track. The gates were down. From that point he could not see the approach of trains. A west-bound one passed, and thereafter the south gate and then the north gate were opened and he started to cross. At this point comes the crux of the case. The railroad company says the positive duty rested upon Dr. Welshman before he reached the track to again stop, look, and listen, and his failure to do so was in law contributory negligence. The plaintiff says this view ignores the invitation of the raised gate, and the real question is not one of law alone, but one of fact, namely, whether in view of both the invitation to cross and of all the surrounding circumstances the nonstoppage by Dr. Welshman was negligence, and whether such negligence contributed to the accident.

The crossing surroundings throw light on that question. Dr. Welshman had no view of approaching trains from where he stopped. Whether he could have had a view of east-bound trains on the south

track before he drove the machine on the north track is, as we view it, a disputed question. The photographs in evidence show that as Dr. Welshman passed the gate his view of east-bound trains on the south track was shut off by a gradually rising bank, which extended westward from Grove street 350 feet to an overhead bridge crossing at Maple avenue. This bridge was 24 feet above the tracks, and the bank between it and the crossing was somewhat higher. Beyond Maple avenue the tracks curved to the north. Now, while there was testimony that as Dr. Welshman drew near the tracks there were places from which he could see trains approaching at a distance of from 600 to 1,500 feet, yet it was also proved by the watchman himself that this was not the fact, and that even from his place on the south side of the crossing—which was manifestly a better viewpoint than Dr. Welshman's—one could not see an approaching train farther than the Maple avenue bridge. On that point we quote his evidence at length:

"Q. How far up the track could you see, the east-bound track, when you stood at the handle of the gate? A. As far as the bridge, the Maple avenue bridge. Q. Could you see a train on the east-bound track as far as the bridge? A. Just about as far as the bridge. Q. Look at the photograph. When you were standing here, could you see a train as far as the Maple avenue bridge? A. You can see as far as the bridge, *but that is as far as you can see;* just this end of the bridge. * * * Q. When did you actually see it [the east-bound train that struck the decedent]? A. I didn't see it until the engineer blowed his whistle at the Maple avenue bridge. Q. You didn't see it until that time? A. No, sir; *that is as far as you can see.* * * *

"By the Court: Q. Let me ask you one more question. You say that you first saw the train itself—the first time you saw or could see the train was when the engineer blew the whistle at the Maple avenue bridge? A. Yes, sir. Q. That is right? A. Yes; that is as far as I could see. Q. Where was the automobile at that time? A. Between the east and west bound tracks."

The Maple avenue bridge was 350 feet from the crossing, and if this testimony of the watchman, who was called by the defendant, was believed, it shows that the furthest view Dr. Welshman could possibly have had of an approaching train was only 350 feet. As Maple avenue was the extent of view from the superior viewpoint of the watchman, it is manifest that Dr. Welshman could not have seen the train in time to avoid the accident, had he stopped his machine at any point to look for it, and that the surrounding circumstances were such that reasonable minds might well conclude that the proper course for him to pursue, after the gates were raised, was to give his attention to driving his car over the crossing without attempting to stop and look for approaching trains. Indeed, the whole situation was peculiarly one for a jury to consider, and from its disputed facts and disputable inferences determine whether, after the invitation to cross, Dr. Welshman was in any respect negligent, and, if so, whether such negligence in any way contributed to the injury. This issue it found in his favor and the judgment entered on its verdict must be affirmed. In thus determining the case on the general principles of the law, it becomes unnecessary for us to discuss the question raised in reference to the New Jersey crossing statute.

## On Petition for Rehearing.

PER CURIAM. [4] The motion for rehearing has had our careful consideration, and we see no reason to differ from the conclusion heretofore reached. While we refrained from discussing in the opinion filed the New Jersey crossing statute, it will be apparent that, in view of the late case in this court of Erie Railroad Company v. Schmidt, 225 Fed. 516, 140 C. C. A. 659, there could be no uncertainty that that statute, in our view of it, was no bar to the present plaintiff's recovery. We here reiterate the views expressed in that case:

"This statute has not been construed by the New Jersey courts, and its full meaning may not be entirely free from doubt; but so far as the facts of the present case require us to declare its meaning we think the proper construction is as follows: A railroad company may protect a crossing by a safety device, or by a flagman, or by both these means. If the device is not in order, due notice to that effect must be given; in the absence of such notice, an approaching traveler may assume that the device is in order and will be duly and properly operated. If a flagman is on duty, the traveler may assume that such employé will give sufficient warning of danger; and if the traveler be nevertheless injured or killed, no action brought for such injury or death shall be defeated by the mere fact that the traveler did not stop, look, and listen. * * * In our opinion, the railroad is mistaken in supposing that the act compels the trial judge to submit to the jury every case of injury or death at a protected grade crossing in New Jersey. The evidence may establish contributory negligence so clearly that the judge would be bound to give the jury binding instructions in favor of the railroad. The act does no more than declare as a rule of evidence that in certain situations the mere fact that the deceased did not stop, look, and listen shall not of itself defeat recovery; but it does not attempt to lay down a rule that every grade crossing case where contributory negligence is alleged must be submitted to a jury. For example: A situation may easily be supposed where the warning of a flagman might be seen and recklessly disregarded, and in such a case the duty of the judge has not been changed by the statute. The Legislature has done nothing more than exercise its conceded power to regulate procedure; it simply provides that a plaintiff is not to be defeated unless more than a specified minimum of evidence be present. This, of course, would bind the state courts, and we see no reason why the federal courts in New Jersey should not conform to the same procedure."

The motion for a rehearing is therefore denied.