GERTRUDE CASTLE, as Administratrix of the Estate of ADOLPH CASTLE, Deceased, Respondent, *v.* DIRECTOR-GENERAL OF RAILROADS, Appellant.

**Negligence — railroad — injury to person attempting to cross street ahead of railroad train running through street — contributory negligence of injured person.**

1. A traveler before crossing a railroad track on a public highway is bound to look and listen for the approach of trains and if he omits to do so and suffers injury there can be no recovery therefor.

2. Where plaintiff's intestate was struck and killed by a train moving upon the tracks of a railroad running through a public street while he was attempting to cross the street and the evidence shows that he could have seen the approaching train, as he came out of a building, for a distance of several hundred feet if he had then looked with any care or if he had looked again before crossing the railroad tracks, but that he did not look after leaving the building, going from seventeen to thirty-one feet before reaching the track, his act was not that of a careful and prudent man and he was guilty of such negligence and carelessness as constitute at law contributory negligence and bar a recovery.

*Castle* v. *Director-General of Railroads*, 193 App. Div. 924, reversed.

(Argued January 13, 1922; decided January 24, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 23, 1920, affirming a judgment in favor of plaintiff entered upon a verdict.

*Raymond C. Vaughan* for appellant. Plaintiff's intestate was guilty of contributory negligence as a matter of law. (*Tucker* v. *N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 308; *Wieland* v. *D. & H. C. Co.*, 167 N. Y. 19; *Swart* v. *N. Y. C. & H. R. R. R. Co.*, 81 App. Div. 402; *Burke* v. *N. Y. C. & H. R. R. R. Co.*, 73 Hun, 32; *Dolfini* v. *Erie R. R. Co.*, 178 N. Y. 1; *Hagglund* v. *Erie R. R. Co.*, 210 N. Y. 46; *Knapp* v. *N. Y., N. H. & H.*

R. R. Co., 158. App. Div. 175; *Bowden* v. *Lehigh Valley R. R. Co.*, 178 App. Div. 413; 226 N. Y. 648; *Barnasky* v. *N. Y., O. & W. R. R. Co.*, 226 N. Y. 435; *Avery* v. *N. Y., O. & W. R. R. Co.*, 205 N. Y. 502; *Fisher* v. *Central Vermont Ry. Co.*, 109 App. Div. 449; *Salter* v. *Utica & Black River R. R. Co.*, 75 N. Y. 273.)

*Hamilton Ward* and *John H. Klein* for respondent. The evidence does not establish contributory negligence on the part of Castle. (Code Civ. Pro. § 841-b; *Broot* v. *A. & S. El. R. R. Co.*, 220 N. Y. 92; *Carr* v. *P. R. R. Co.*, 225 N. Y. 44; *Elias* v. *L. V. R. R. Co.*, 226 N. Y. 154; *Brink* v. *Erie R. R. Co.*, 190 App. Div. 527.)

CRANE, J. On the 8th day of April, 1919, while Adolph Castle was walking west on Webster avenue in the city of North Tonawanda, N. Y., just north of Sweeney street and across the tracks of the New York Central Railroad Company, he was struck by an engine and train going southerly and killed. His wife, as administratrix, brought this action for alleged negligence of the railroad company in causing his death and at a Trial Term of the Supreme Court recovered a judgment which has been affirmed by the Appellate Division, two of the justices dissenting.

A serious question has arisen with us upon this appeal, whether the death of Castle was not brought about by his own heedlessness.

By section 841-b of the Code of Civil Procedure, in an action of this kind the contributory negligence of the person killed is a defense which must be pleaded and proven by the defendant.

We have come to the conclusion that the defendant in this case has met the burden. A brief summary of the testimony, as we find it, may be given to explain our views.

Adolph Castle lived with his wife and two children in

[232 N. Y. 430]　　　Opinion, per CRANE, J.　　　[Jan.,

Buffalo. He was thirty-one years of age and a salesman of stationery. On the day in question he had been in the Sweeney building in North Tonawanda on business, and a little before noon came out of the building and apparently was going to his Ford car which was on Webster avenue near Sweeney street.

The Sweeney building faces west on Webster avenue, and is near the corner of Sweeney street, which is on the south. To the north is Tremont street. The track of the railroad company runs north and south through Webster avenue and close to the easterly side thereof.

On the westerly side of the track there is the curb and to the west of the curb the traveled portion of Webster avenue.

Castle's Ford car was about ten feet from Sweeney street up against this curb, west of the track. To reach it he would have to cross the track. At this point the track runs so close to the easterly sidewalk of Webster avenue that the easterly rail of the track is as near as fifteen to seventeen feet from the Sweeney building.

Castle was seen coming out of the Sweeney building and standing or pausing on the top or third step leading to the sidewalk. He looked, at this time, in both directions and could see at least as far as Tremont street. This was a distance of about two hundred and sixty-three feet. There is evidence that he could see farther than this, but this is the testimony most favorable to the plaintiff. The train was coming up grade as it approached Sweeney street and the engine was making the noise from the exhaust which usually accompanies such motion. The witnesses for the plaintiff in substance state that Castle proceeded in a diagonal direction south or towards Sweeney street and was struck about ten feet from Sweeney street, and as soon as he put his foot over the easterly rail. As the entrance, out of which he came, was forty-one feet from Sweeney street, he must have walked about thirty-one feet with his back to the coming train.

Witnesses for the defendant say that he looked at the top step and then walked out at right angles to the train and was struck as soon as he stepped over the easterly rail.   No witness saw the deceased look after he left the top step of the building and before he stepped on the track.   No witness saw him stop.

Plaintiff's witness (Foels) says that when he first saw Castle he was just stepping off the sidewalk and had his hand on his hat.   " Q. Did you see him look towards the north?   A. No.   Q. Did you see him look towards the train at all?   A. No.   Q. From the time you saw him until he stepped on the track was it a very short time? A. Yes.   Q. He only had to cover the space between the edge of the sidewalk and the first rail?   A. Yes (about six or seven feet).   Q. How close was he to the track when you first saw the train?   A. It all happened in a second.   He stepped over and the train was right there. I happened to be looking that way."

James W. Hirshell, called by the plaintiff, testifies that when he first saw Castle he was in the center doorway of the Sweeney building and that after pausing a moment on the top step and looking up and down the street, he came down the steps going towards Sweeney street, in a diagonal direction and at an ordinary walking gait to get into his automobile.   He says that he was struck just as he stepped over the first rail about eight or ten feet from the crosswalk at Sweeney street.   He was asked the following: " Q. From the time he came out of the building until he was struck, did you see him stop at any time? A. No.   Q. From the time he left the steps until he was struck, you did not observe him look at all?   A. No. Q. Was this question asked you, ' How far could he have seen it if he had looked, in your opinion? ' (meaning the train), and did you reply ' Why a quarter of a mile, about from here to the depot? '   A. Yes, I told him that."

28

We understand the plaintiff's counsel to say that the defendant's evidence in part aided the plaintiff's case.

The witness called by the defendant, named Thomas Ales, says that there was a man on the top step of the Sweeney building when the train was down near him, about two hundred and fifty or three hundred feet north of Tremont street. This would make it about five hundred feet from the Sweeney building. He does not say that this man was the deceased, but the inference is that he was.

The witnesses Butler and Hewitt, for the defendant, say that Castle came down the steps and crossed in a straight line or at right angles to the track and was struck by the train as he stepped upon the rail.

Butler says that the man looked as he came down the steps, but did not look again, while Hewitt says: " It looked to me as if he was hurrying to get across the tracks ahead of the train."

This last witness was apparently a disinterested witness in that he was in the publishing business and in no way connected with the defendant.

From this summary of the testimony bearing upon the action of Adolph Castle just before he met his death, it seems to us as though all the evidence and the inferences to be drawn therefrom point to the following conclusions: that the train was coming faster than the ordinance allowed, and within sight of Castle, if he had looked from the top step with any care, or if he had looked again before crossing the railroad tracks; that he did not look after leaving the building, going from seventeen to thirty-one feet, and that he was guilty of such negligence and carelessness as constitutes at law contributory negligence and bars a recovery in this case. (*Zucker* v. *Whitridge*, 205 N. Y. 50; *Ploxin* v. *Brooklyn Heights Railroad Co.*, 171 App. Div. 925; affd., 220 N. Y. 609.)

The railroad tracks were to be seen some distance above Tremont street. A traveler before crossing a

railroad track on a public highway is bound to look and listen for the approach of trains and if he omits to do so and suffers injury there can be no recovery therefor.

In this case if Mr. Castle had looked at any time after leaving the steps of the Sweeney building he must have seen the approaching train. To have walked fifteen or twenty, perhaps thirty feet, and then to have crossed in front of it without looking again was not the action of a careful and prudent man. (*Dolfini* v. *Erie Railroad Co.*, 178 N. Y. 1.)

During any part of this time the train could not have been more than five hundred feet away, coming, as nearly all the witneses testify, at twenty or thirty miles an hour. Whatever the crossing flagman may have done did not relieve the deceased from the duty of exercising care.

For the reasons here stated, the judgments below must be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., HOGAN, POUND, McLAUGHLIN and ANDREWS, JJ., concur; CARDOZO, J., concurs in result.

Judgments reversed, etc.