KIRKLAND K. KENNAN, Appellee, v. UNITED STATES RAILWAY ADMINISTRATION et al., Appellant.

**RAILROADS:** Accidents at Crossings—**Negligence Per Se.** Negligence *per se* is revealed in the act of a person in backing an automobile

upon a railway track at the very time when a train, to his knowledge, was due, with precaution to look for a train when his range of vision was very *limited*, but with no precaution to look at a point of time when he could have seen a train for a distance of 750 feet.

*Appeal from Benton District Court.*—B. F. CUMMINGS, Judge.

APRIL 1, 1924.

ACTION for damages for personal injuries sustained in a collision between a train and an automobile upon a private crossing. There was a verdict for the plaintiff and judgment thereon, and defendant appeals.—*Reversed.*

*G. W. Burnham, J. G. Gamble,* and *R. L. Read,* for appellant.

*Nichols & Nichols* and *R. S. Milner,* for appellee.

ARTHUR, C. J.—The injured party was a minor, seventeen years of age, and is represented in the action by his father, as next friend. For convenience of discussion, we shall refer to the injured party as the plaintiff. The collision under consideration occurred on Sunday, about 5:30 P. M., on October 12, 1919. The defendant's train was one of its regular passenger trains, running on scheduled time. The plaintiff occupied a closed Ford sedan, and was backing it across the defendant's track at the private crossing of one Aungst. At this crossing, the line of railway extends north and south. At some distance east of the railway, and running parallel therewith, is the Cedar River. A short distance west therefrom is a north and south public highway. The line of railway traverses the farm of one Aungst, and the private crossing in question was maintained for his benefit, and was protected by gates in the right-of-way fences on both sides. The crossing was accessible from the highway only by passing through the farmyard of Aungst. This was the course pursued by the plaintiff an hour or more before the accident. The purpose of plaintiff was to join some young people on the banks of the Cedar River, which is said to have been a favorite outing resort. He opened the closed gates and crossed

the right of way. The only apparent purpose of his taking his car across was to park the same. He stopped it on the traveled track, just outside of the east gate. From that point, he went on foot, and joined his company at the river. The company walked up the river for the distance of half a mile or more, and then proceeded westward to the railroad right of way, upon which they entered, and from such point strolled south on the railway track to the point of the Aungst crossing. The larger number of the company passed out to the highway through the west gate and through the farmyard of Aungst. The plaintiff and two young ladies who were to ride with him in his car turned to the east gate. The young ladies were the witnesses Blanche Kerns and Mabel Grimm. At this time, a fast passenger train running south was nearly due. The plaintiff knew the character of the train and its scheduled time. From this crossing, the track extends due north for approximately 300 feet, or a little less, at which point it curves slightly toward the east. Notwithstanding this curve, to one standing at the rails on the crossing or at any point within 25 feet east thereof a train from the north would come into plain view at a distance of not less than 750 or 800 feet. For a person standing at the east gate, however, the view would be cut off at a distance of from 265 to 335 feet. The plaintiff arranged with the young ladies that they were to stand as lookouts, to watch for the train, and were to close the east gate as soon as he had backed through the same. For that purpose, he stationed them at the east fence, at the point of shortest view to the north. The view to the south was clear for miles, so that no apprehension was felt from that direction. There were no facilities present for turning around plaintiff's car. This he knew when he placed it there. The single track across the right of way was narrow, but smooth. It was flanked on the south by an embankment, and on the north by a depression or ditch, so that some care had to be exercised in backing the car, to keep it strictly upon the narrow track. After cranking his car, the plaintiff took his place behind the wheel at the left side, closed the car door, turned his back toward the north, looked over his right shoulder, in order to command a rear view, and proceeded to back the car. In so doing he had to back up an incline. His car was running with the cut-out

open, and was necessarily noisy. He was moving slowly, at three or four miles an hour. Immediately after he had passed through the east gate, his lookouts saw the train coming. It was then at a distance of from 265 to 335 feet. Its speed was estimated at from 45 to 50 or 60 miles an hour. The young ladies screamed, but failed to attract the plaintiff's attention. It was then a matter of seconds only until the collision had occurred, and the plaintiff sustained severe injuries thereby. At no time did he discover the approach of the train nor hear the screams of the young ladies; nor did he learn in any way that they were trying to get his attention. He did testify that he looked both north and south for a train, immediately after passing through the east gate.

The one question presented for our consideration on this appeal is: Was the plaintiff conclusively guilty of contributory negligence?

After a careful consideration of the entire record, we are united in the view that the plaintiff was conclusively negligent. When he drove his car across the right of way, he knew that he was placing it in a position from which he could not extricate it except by backing over the same track. He was so, in his selection of both time and method of its extrication. The train was exactly on time, and plaintiff knew its time. He selected that very time for exposing his car upon the track, and put himself in a position where he could neither see nor hear the approach of the train nor the call of the lookouts whom he had posted. His act in posting the lookouts lost its value as evidence of care, when he posted them where they could not see, instead of where they could see. A change of their position of 25 feet would have multiplied the extent of their view by two or three times. The same is to be said concerning the plaintiff's own looking for a train at the east gate. A point in his course was available to him where he could have seen the train for a long distance. He chose to look from a point where the view was dangerously short, and then to cut off all possible communication between him and his lookouts.

One circumstance is presented to our attention by way of mitigation of his reckless conduct. He thought that he had heard the passenger train go by some time before, when the

company was at the river. A train did go by at that time, but that was not even the approximate time of the passenger train, and he had no reason to suppose that the train would pass in advance of its scheduled time. The passing of trains over a railroad line is something to be expected at all times, and the passing of one at any time furnishes a poor reason for thinking that another will not appear at scheduled time. If, at a point 25 feet east of the rails, the plaintiff had looked for the train, he could not have failed to see it. His car was moving slowly, and under perfect control. He was backing up hill. All he would have needed to do to bring his car to a stop was to lift his foot from the reverse lever. The car would thereupon have moved at once down hill and away from the track. From a point 25 feet east of the rails, he had a perfect opportunity to protect himself from all danger. However, after passing through the east gate, he abandoned himself to the mere chance of crossing the collision zone in front of a possible train. Unless his conduct, as here indicated, amounted to conclusive negligence as a matter of law, we should be quite unable to conceive of any form of conduct that would be such.

We hold, therefore, that the plaintiff was guilty of contributory negligence, as a matter of law. It follows that the judgment in his favor must be reversed.—*Reversed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.