H. M. CROWLEY, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellee.

RAILROADS: Accidents at Crossings—Negligence—Non-working Signal Device—Effect. The presence and silence, at a railway crossing, of an automatic railway-signaling device may be quite influential in saving a traveler from the imputation of negligence *per se* in approaching and going upon the crossing when he is faced by two closely adjacent parallel tracks, and when the immediate possible danger is on the first track, though he was actually injured on the second track.

Headnote 1:   33 Cyc. pp. 1028, 1029, 1126.

Headnote 1:   L. R. A. 1916D, 789; 22 R. C. L. 1041.

*Appeal from Clarke District Court.*—A. R. MAXWELL, Judge.

APRIL 5, 1927.

REHEARING DENIED JANUARY 13, 1928.

Action for personal injuries received by plaintiff when the automobile in which he was riding was struck by defendant's train. A verdict was directed for the defendant at the close of the plaintiff's evidence. The plaintiff appeals from the resulting judgment.—*Reversed and remanded.*

O. M. Slaymaker and R. E. Killmar, for appellant.

L. E. Crist, V. R. McGinnis, and J. C. Pryor, for appellee.

VERMILION, J.—Appellee's double-track railway runs through the city of Chariton in a generally east and west direction. Braden Avenue and Court Avenue are parallel streets, 400 feet or more apart, leading west, the former from the northwest corner, and the latter from the southwest corner, of the public square. Appellee's tracks coming from the northwest, curve at about Braden Avenue, and run south to Court Avenue, beyond which they turn to the southeast. For the distance of one block between these streets, the tracks are practically straight, and are one block west of the public square. What is, generally speaking, the south track—the west track at Court Avenue—is used for east-bound trains; the other for the west-bound traffic. There is at the Court Avenue crossing, just east of the tracks, an automatic electric signaling device, installed and maintained by the appellee, by which a bell is rung and a swinging red light is displayed on the approach of a train from either direction or on either track.

At about midnight of July 10, 1924, a Ford coupé, driven by one Hart, in which appellant was riding, was proceeding west over the Court Avenue crossing when it was struck by an east-bound express train, running south at that point on the second, or west, track, and appellant was injured. A few minutes before the collision, appellant had been called to go to a point some distance west of the Court Avenue crossing. Hart volunteered to take him in the car he was driving. They started from a point north of the public square, proceeded south through the square, and turned west on Court Avenue. The car was slowed down, to let a car in front turn into an alley, and its speed from there to the crossing was not greater than ten miles

per hour.  The surface of the street was rough, and slightly up-grade from about the middle of the block to the crossing.  The windows of the car were open, and appellant sat on the right, or north, side.  The car was nearly new, and ran quietly.

There was testimony tending to show that no signal by bell or whistle was given from the train; that the automatic signaling device did not indicate the approach of a train; that the train was late, and appellant thought it had gone.  The testimony showed the car was about ten and a half feet long, and that it could have been stopped, at the speed it was going, in about ten feet.  Both appellant and Hart were experienced automobile drivers, and were familiar with the crossing.

It is not seriously contended that there was not sufficient evidence of appellee's negligence to take that question to the jury.  The only proposition requiring our consideration is that of contributory negligence.

The appellee pleaded that Hart was guilty of contributory negligence, while appellant contends in argument that he was entitled to rely upon the exercise of due care by Hart.  Hart was not a witness on the trial.  His negligence, if any, was not imputable to appellant.  *Wagner v. Kloster,* 188 Iowa 174; *Barrett v. Chicago, M. & St. P. R. Co.,* 190 Iowa 509.  The appellant was in as good, if not better, position than Hart, to see or hear a train coming from the north.  His testimony clearly indicates that he was assuming to exercise the care required of one about to pass over the crossing.  Under such circumstances, there is no reason for exacting a lower degree of care from him in these respects than Hart was required to exercise.  *Beemer v. Chicago, R. I. & P. R. Co.,* 181 Iowa 642; *Barrett v. Chicago, M. & St. P. R. Co.,* supra.  The case, as submitted to us, turns upon the question whether appellant was guilty of contributory negligence, as a matter of law, in not discovering the approaching train in time to have warned the driver, and for the latter to have stopped before reaching the track on which the collision occurred.

The west side of the square, except at an alley in the center, and the north side of Court Avenue nearly to an alley midway between the square and the crossing, are solidly built up.  About 15 feet west of the alley there is a residence on the north side of the street, referred to in the evidence as the Peake house.  It is

practically conceded that appellant had no view of a train approaching from the north until the car had passed the Peake house, the west side of which was about 70 feet from the track. West of the Peake house there were a latticework, some trees and telephone poles in the parking, trees in the Peake lot, and a hedge along the line between the Peake lot and the right of way.

Appellant, who was the only witness who testified on the subject, said there was, by reason of these obstructions, no view of a train approaching from the north until a point 15 feet from the first track was reached. He testified that he listened for trains, and heard none; that he looked for trains from the north from the time they passed the Peake house until they reached a point 15 or 20 feet from the first track, and saw none; that he was looking for a light among the trees. He testified that there were several cars on the other side of the crossing, approaching from the west; that he could not tell how far away they were. He said:

"Their lights would have quite a bit of effect with reference to obstructing the glare of a headlight; you could not see to the side of you; the light would blind you."

He testified further:

"I looked at the bell, and I looked north for trains. I looked south for trains, and the last I remember, I looked at the bell. I was then about 15 or 20 feet from the track. I didn't hear any bell and I didn't see any light. I could have heard the bell if it was ringing. When we got there, the signaling device was not working. There was no light in that arm. * * * I knew the signaling device was put there to work, and I relied on it, being in operation and working."

He testified that he was familiar with the signaling device, and had never known of its being out of order. On cross-examination he said:

"The last thing I remember is when we were about 15 or 20 feet from the east track. I don't remember of looking at anything after that; the last thing I remember of was looking up at the bell, about 15 or 20 feet from the track. I say I looked to the north just before I looked at the bell; I don't remember after that."

Appellant also testified that the space between the tracks was

11 or 12 feet, and that the rails of a track were about 4 feet 8 inches apart.

There was testimony that the train was traveling at a speed of 35 to 38 miles per hour. The train was, therefore, moving at a rate not to exceed four times that of the automobile. When the car passed the Peake house, 70 feet from the first track, the train was then south of Braden Avenue, and when it reached the point 15 feet from the first track and 31 or 32 feet from the second track, the train was not to exceed 150 feet from the point of collision.

Were it not for the fact that the automatic signaling device maintained by appellee indicated that the way was clear, and that the appellant relied thereon, the case would present less difficulty. If appellant could have seen the train when more than 15 feet from the first track, and in time to have warned the driver, and the latter could, in the exercise of due care, have stopped the car in safety, but appellant did not see it, although he looked, as he testified, he would not be excused for failing to see what was visible. *Landis v. Inter-Urban R. Co.*, 166 Iowa 20; *Reynolds v. Inter-Urban R. Co.*, 191 Iowa 589. Whether the train could have been seen before reaching that point was, under the evidence, clearly a question for the jury. If he could not see the train before reaching that point, and did not look after reaching it, and there was then space within which he might have warned the driver, and the latter might have stopped in safety, he was guilty of contributory negligence, unless it could be found that he was then excused from looking by the circumstances surrounding him, including the failure of the signaling device to give any warning of an on-coming train. *Yanaway v. Chicago, R. I. & P. R. Co.*, 195 Iowa 86; *Kennan v. United States R. Adm.*, 197 Iowa 699; *Bannister v. Illinois Cent. R. Co.*, 199 Iowa 657.

Adjudicated cases are not in entire accord as to the extent to which a traveler about to cross a railway track has a right to rely upon a signaling device maintained by the railway company for the purpose of warning travelers of an approaching train. Some courts view the failure of an automatic signal to give the intended warning as a mere act of negligence, analogous to the failure to give required signals from the moving train, and as having no more effect to relieve the traveler of the duty

to look and listen than the absence of such signals. *Jacobs v. Atchison, T. & S. F. R. Co.*, 97 Kan. 247 (154 Pac. 1023, L. R. A. 1916D 783); *Headley v. Denver & R. G. R. Co.*, 60 Colo. 500 (154 Pac. 731); *Union Pac. R. Co. v. Rosewater*, 84 C. C. A. 616 (157 Fed. 168); *Atchison, T. & S. F: R. Co. v. McNulty*, 285 Fed. 97.

The same doctrine has been, in effect, applied in cases involving gates or flagmen. *Louisville & N. R. Co. v. Webb*, 90 Ala. 185 (11 L. R. A. 674); *Greenwood v. Phil. W. & B. R. Co.*, 124 Pa. St. 572 (3 L. R. A. 44); *Castle v. Director-General of Railroads*, 232 N. Y. 430 (134 N. E. 334); *Bush v. Baltimore & O. R. Co.*, 288 Fed. 845; *Cadwallader v. Louisville, N. A. & C. R. Co.*, 128 Ind. 518 (27 N. E. 161); *White v. Chicago & N. W. R. Co.*, 102 Wis. 489 (78 N. W. 585); *Rusczck v. Chicago & N. W. R. Co.*, 191 Wis. 130 (210 N. W. 361); *Ellis v. Boston & M. R.*, 169 Mass. 600 (48 N. E. 839).

It is universally held that the traveler has no right to assume, from the mere fact that an automatic bell is not ringing, that the way is clear, and to proceed without any precaution for his own safety. See *Southern I. R. Co. v. Corps*, 37 Ind. App. 586 (76 N. E. 902), and cases herein cited.

Some cases hold that the fact that an automatic signal gives no warning of an approaching train is a circumstance to be considered on the question of the traveler's exercise of due care, and that the question, in such case, becomes one of fact, to be determined by the jury. *Stewart v. Northern Pac. R. Co.*, 96 Wash. 486 (165 Pac. 377); *Tobias v. Michigan Cent. R. Co.*, 103 Mich. 330 (61 N. W. 514); *Kimball & Fink v. Friend's Admr.*, 95 Va. 125 (27 S. E. 901); *Hicks v. New York, N. H., & H. R. Co.*, 164 Mass. 424 (41 N. E. 721); *Birmingham S. R. Co. v. Harrison*, 203 Ala. 284 (82 So. 534); *Southern I. R. Co. v. Corps*, supra.

This rule has also been applied in cases of open gates or the absence of a flagman. *Pennsylvania Co. v. Stegemeier*, 118 Ind. 305 (20 N. E. 843); *Richmond v. Chicago & W. M. R. Co.*, 87 Mich. 374 (49 N. W. 621); *Gundlach v. Chicago & N. W. R. Co.*, 172 Wis. 438 (179 N. W. 577); *Delaware, L. & W. R. Co. v. Welshman*, 143 C. C. A. 358 (229 Fed. 82, L. R. A. 1916E 816).

In some of the cases adhering to the doctrine that the fact that the signal gave no warning was a circumstance to be taken

into account in determining whether the traveler exercised due care, it has been held that he was still required to look and listen for approaching trains, and that his failure to do so would be negligence. *Cleveland, C., C. & St. L. R. Co. v. Heine*, 28 Ind. App. 163 (62 N. E. 455); *Ellis v. Boston & M. R.*, supra; *Mc-Sweeney v. Erie. R. Co.*, 93 App. Div. 496 (87 N. Y. Supp. 836). The diversity of judicial opinion is concisely stated in an annotation in L. R. A. 1916D 788.

In *Sala v. Chicago, R. I. & P. R. Co.*, 85 Iowa 678, a flagman had been kept at the crossing, to the knowledge of the plaintiff, but was absent at the time of the accident. We said:

"The absence of the watchman should not be regarded as an invitation to cross without looking for danger. Such a case is distinguishable from one where the watchman is present, and by a signal to cross, or by a failure to give any signal when he sees a crossing attempted, gives assurance, either express or implied, that it can be made without danger."

In *Lockridge v. Minneapolis & St. L. R. Co.*, 161 Iowa 74, it was said:

"Moreover, it is a rule of common sense, as well as law, that, in a populous city, where, under the ordinances of the city, a railroad company is required to have gates or maintain watchmen or flagmen, and where they are maintained by a railroad company, parties have a right to presume that, when no warning is given to them as they approach, they may proceed with safety."

In *Reynolds v. Inter-Urban R. Co.*, supra, we said that there was no inconsistency in the *Sala* and *Lockridge* cases, and further:

"But this rule of an implied assurance of safety because of the lifting of gates or the absence of watchmen cannot be held to be universally applicable to a crossing in the country, or to a crossing where the view is practically unobstructed, and where, by looking and listening, a driver can observe an approaching train."

We also said:

"The entire absence of the flagman, even if one was customarily present, would not relieve the appellant of the duty to look and listen as he approached this railway crossing, under the situation and circumstances disclosed by the evidence."

In *Dusold v. Chicago G. W. R. Co.*, 162 Iowa 441, we said:

"While a railroad crossing suggests danger, the absence of danger signals, the absence of that which usually and ordinarily exists, which suggests danger, may have the effect of lulling the mind into a sense of security."

And in *Brose v. Chicago G. W. R. Co.*, 185 Iowa 867, we said:

"Plaintiff knew of the automatic signaling device at the crossing, and was quite naturally induced, by its failure to work, to believe the crossing clear and free from danger. The jury had a right to take this fact into consideration, in deciding whether plaintiff exercised ordinary care in attempting to go upon the crossing."

The difficulty, if not, indeed, the impropriety, of laying down any hard and fast rule is apparent. In a sense, and doubtless in the popular estimation, the fact that an automatic signaling device, maintained by a railroad company for the purpose of giving warning of an approaching train, is silent, where the traveler has no means of knowing that it is out of order, is some assurance that the way is clear. In *Wabash R. Co. v. McNown*, 53 Ind. App. 116 (99 N. E. 126), it is said that the public has a right to rely upon it, to the extent of assuming that it will correctly indicate the danger, or give the warning it was intended to give. But, at best, it serves only as a warning, and is mechanical. A machine may fail. It is to be distinguished from gates that bar the way or a flagman who, with human intelligence, controls the traffic over the crossing. *Jacobs v. Atchison, T. & S. F. R. Co.*, supra. Its purpose and proper function are to furnish to the traveler an added protection, in addition to that afforded by proper signals from the train and the due exercise of his own faculties, rather than to relieve him from the necessity of exercising due care for his own safety, or to increase the liability of the railroad company. *Jacobs v. Atchison, T. & S. F. R. Co.*, supra. It is clear that the presence and silence of such a signaling device cannot operate to entirely relieve one approaching the crossing from the duty to exercise due care.

The ultimate and difficult question is to what extent the fact that such a device does not indicate the approach of a train, where the traveler has no reason to think that it is out of order,

relieves him from the duty that would rest upon him, were no such device present at all, and, more particularly, with respect to his duty to look and listen.

It is elementary that negligence is the failure to exercise reasonable care. under the circumstances existing at the time. The presence of a signaling device to warn of approaching trains is one of the circumstances surrounding the traveler who approaches a crossing so equipped. *Dusold v. Chicago G. W. R. Co.,* supra; *Brose v. Chicago G. W. R. Co.,* supra. We cannot agree with those cases that hold that its presence is not at all to be taken into account in determining whether he exercised due care. Nor are we prepared to say that its presence must of necessity make the question of his contributory negligence in all cases one for the jury. If the silence of such a device is to be given any effect in determining the question of contributory negligence, it is apparent that its tendency would be to present a jury question. But, as we have frequently observed, whether contributory negligence is a question of law for the court or of fact for the jury must be determined on the facts of the particular case.

When the car reached the point 15 feet from the first track, the most imminent danger was from a train that would approach from the south on that track. So far as appeared to appellant, if we accept his story, as we must, in view of the directed verdict, there was as much likelihood of a train on one track as the other. He was bound to exercise due care to protect himself against the danger to be apprehended from the first track, and that, obviously, demanded his first attention. When the length of the car, appellant's position in it, the proximity of the first track, the overhang of a train, the distance within which the car could have been stopped, and the necessity of informing the driver before it could be stopped, are considered, it is apparent that the margin of safety from this more immediate danger was extremely slight. The car was then in a zone of danger. The distance between the tracks was such that there was no place of absolute safety beyond the first track until the second was crossed. But the danger from the second track was the more remote. The inactivity of the signaling device indicated that no train was approaching. Almost without exception, the authorities agree that the traveler has a right to rely to some ex-

tent on this fact; that it is a circumstance to be taken into account in determining whether he exercised due care.

To hold the appellant conclusively guilty of contributory negligence in failing to look to the north at this point would be to say that he must do so notwithstanding, and possibly to the neglect of, his more immediate duty to look to the south, and, in effect, to deny his right to rely at all upon the absence of warning from the signal. The question is not what it appears in sober retrospect he might have done, to prevent the accident. All that the law required of him was that he exercise ordinary and reasonable care for his safety under the circumstances surrounding him. Among these circumstances were the more immediate danger to be apprehended from a train on the first track, and the absence of the warning he had a right to expect from the signaling device, if a train was approaching. We think that the question of contributory negligence, upon the record presented, was for the jury, and that the motion should have been overruled. —*Reversed and remanded.*

EVANS, C. J., and STEVENS, FAVILLE, and MORLING, JJ., concur.