KITTIE SMITH et al., as Administrators of the Estate of CHRIS J. SMITH, Appellants, *v.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

CONTRIBUTORY NEGLIGENCE — WHEN QUESTION OF FACT.    Where it appears in an action to recover damages for injuries caused by a collision with a railroad train at a crossing, that the accident occurred in the night time at a concededly dangerous crossing under circumstances tending to establish negligence on the part of the defendant and under conditions and surroundings to which must be applied the rule of ordinary care in human conduct, that rule is to be measured, not by the great caution of one or the extreme carelessness of another, but according to the standard fixed by the consensus of common sense based upon human experience, and the question whether the plaintiff exercised reasonable and ordinary care for his own safety, under the circumstances, is a question for the determination of a jury and not for the decision of a court.

*Smith* v. *N. Y. C. & H. R. R. R. Co.,* 75 App. Div. 630, reversed.

(Argued December 18, 1903; decided January 19, 1904.)

APPEAL from a judgment, entered October 25, 1902, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, which affirmed an order of a Trial Term denying a motion for a new trial after a nonsuit.

The action was originally brought by Chris J. Smith to recover damages for personal injuries sustained by him, and for the destruction of his horse, carriage and harness.    Pending the appeal to this court the original plaintiff died, and the action was revived and continued in the names of the present plaintiffs as his representatives.    The only part of the action that survives is that which relates to the recovery of damages for the destruction of the personal property.

After midnight on the 26th day of December, 1900, the plaintiffs' intestate collided with a west-bound passenger train of the defendant at the Palmyra crossing on its main line.    He was severely injured, his horse was killed and his carriage and harness demolished.    The only eye-witnesses to the accident

were the injured man and the engineer of the train. The latter was not called as a witness. The former testified that he looked both ways and listened, and that there was no warning by whistle or bell. The colliding train was running at the rate of about forty-eight miles an hour. The Palmyra crossing, at which the accident occurred, was concededly a dangerous one. From seven A. M. to seven P. M. it was guarded by a flagman and by automatic gates. At night it was left unguarded. Plaintiffs' intestate was familiar with the crossing, having passed over it many times both day and night, during the three months immediately preceding the accident, and he knew that it was guarded by day and unguarded at night. At this crossing the highway runs substantially north and south and the railroad east and west. There are six tracks. The four main tracks are numbered from one to four inclusive, counting from south to north. North of these main tracks are two side tracks or branches. The colliding train was westward bound on main track No. 2. Thirty-four feet to the north of the northerly main track, and 126 feet to the east of the crossing (or 145 feet from its center) there is a building known as the Bennett warehouse, about 30 feet in height and about 94 feet in length from east to west. Further to the east and about 86 feet from the Bennett warehouse is a coal shed about 73 feet in length and about 20 feet in height. Still further to the east and 116 feet from the coal shed there is a " dry house " about 80 feet long and 40 feet high. Yet further to the east and about 30 feet from the dry house is the defendant's engine house which is about 70 feet long and about 20 feet high. Beyond the engine house are a number of small dwellings, the most easterly of which is about 846 feet easterly of the crossing. On the north these buildings face a highway which is practically parallel with the railroad and about 100 feet northerly therefrom.

To the west of the crossing and on the north side of the tracks, the only building to obstruct the view is the defendant's freight house which is 400 feet from the crossing.

On the night of the accident plaintiffs' intestate had been

at the house of Kate Cook, who lives about 800 feet north of the crossing. He started for home soon after midnight. It was cold and cloudy, with a light wind blowing from the west. He was driving a gentle horse hitched to a light top buggy, with the top let down. He drove at a walk, and when he got within 10 or 15 feet of the north track he stopped his horse and listened and looked. He looked first to the west and then to the east. Hearing nothing and seeing nothing, he continued at a walk, and when he reached the first or north track he looked west and then east. He heard nothing and saw nothing but a number of switchlights to the east of the crossing. He continued to walk his horse and again looked west, " and," to use his own words, " when I turned my head back to look east there was a train right on me. That was all I knew until aftewards."

Owing to the location of the buildings above referred to, east of the crossing and north of the railroad, a continuous view of the railroad to the east of the highway is impossible to the traveler approaching from the north until he reaches a point at or near the north rail of the north switch track.

The distance from the north gates at the crossing to the north rail of track No. 2 is 53 feet, and from the north rail of the north switch track to the north rail of track No. 2 is 45 feet. From the north rail of main track No. 4 to the north rail of track No. 2 is 25 feet.

On the night of the accident there were three box cars on the northerly switch track, the west end of the most westerly of these cars being about 33 feet west of the Bennett warehouse. Several witnesses for the plaintiff testified that in order to see a train coming from the east, one must get close to the north switch track, which runs along the south face of the Bennett warehouse, but curves to the south as it approaches the crossing, so that a person standing on the north switch track gets a straight and unobstructed view to the east for a distance of about 2,000 feet before the tracks curve to the north and disappear from view.

This evidence was supplemented in detail by defendant's

engineer, who testified that standing 58 feet north of track No. 2 with a car on the north branch track and projecting 33 feet westerly from the Bennett warehouse, a man can see track No. 2 to the east for a distance of 452 feet; under the same conditions and 45 feet north of track No. 2 a man can see track No. 2 and all the tracks to the east for a distance of 1,500 feet. To the east of the crossing and 126 feet distant there are two switch lamps; at a point 300 feet east there is another, and at 1,150 feet there are eleven others. These are on standards 3 or 4 feet high, red, white or green in color, and are the usual "bull's-eye" lights.

*John Gillette* for appellants. The court having granted a nonsuit, the appellant is entitled to the most favorable inferences deducible from the evidence, and all disputed facts are to be treated as established in his favor. (*McDonald* v. *M. S. R. Co.*, 167 N. Y. 66; *Ladd Case*, 147 N. Y. 478; *Higgins Case*, 155 N. Y. 466; *Ten Eyck Case*, 156 N. Y. 341; *Bank of M. V.* v. *Weston*, 159 N. Y. 201; *Tiddler* v. *N. Y. C. & H. R. R. R. Co.*, 64 App. Div. 95; *Henavie* v. *N. Y. C. & H. R. R. R. Co.*, 166 N. Y. 280; *Smith* v. *L. V. R. R. Co.*, 61 App. Div. 46.) From the facts disclosed by the evidence, and herein set forth, of the surroundings and conduct of the plaintiff at the time of the injury, the question of contributory negligence on his part was one for the jury and could not be determined as one of law by the court. (*Beckwith Case*, 54 Hun, 440; 125 N. Y. 759; *Miller Case*, 81 Hun, 164; 146 N. Y. 367; *Parsons Case*, 113 N. Y. 355; *Greany Case*, 101 N. Y. 419; *Smith* v. *L. V. R. R. Co.*, 61 App. Div. 46; *Zwack* v. *N. Y., L. E. & W. R. R. Co.*, 160 N. Y. 362; *Judson* v. *C. V. R. R. Co.*, 158 N. Y. 597; *Henavie* v. *N. Y. C. & H. R. R. R. Co.*, 166 N. Y. 280; *McDonald* v. *M. S. R. Co.*, 167 N. Y. 66; *Fealey* v. *Bull*, 163 N. Y. 397.)

*Albert H. Harris* for respondent. The plaintiff was guilty of contributory negligence. (*Smith* v. *R. R. Co.*, 137 N. Y.

562; *Nash* v. *N. Y. C. & H. R. R. R. Co.*, 34 N. Y. S. R.
788; *Fiddler* v. *R. R. Co.*, 64 App. Div. 95; *Matter of Look*, 26 N. Y. S. R. 745; *Dobie* v. *Armstrong*, 160 N. Y.
584; *Schoepflin* v. *Coffey*, 162 N. Y. 12; *Fealey* v. *Bull*, 163 N. Y. 397; *Hudson* v. *R. R. Co.*, 145 N. Y. 408; *Walters* v. *S. R. T. Co.*, 84 App. Div. 64; *Kappus* v. *R. R. Co.*, 82 App. Div. 13.)

WERNER, J.    For the purposes of this discussion, the defendant's negligence must be deemed to have been established, since it is practically conceded that the evidence as to the speed of the train and the failure to give warning signals of its approach was sufficient to put the defendant to its proof upon that subject.

It is obvious, therefore, that the nonsuit herein was granted by the trial court, and sustained by the Appellate Division, upon the ground that the plaintiffs' intestate was clearly shown to have been guilty of contributory negligence, and thus the question presented on this appeal is, whether the evidence under this head was so clear and definite as not only to permit but require the legal conclusion that plaintiffs' intestate could not have been injured but for his own lack of care. This question must be considered in the light of the inferences most favorable to the plaintiffs deducible from all the evidence. ( *McDonald* v. *Metr. S. R. Co.*, 167 N. Y. 66, and cases cited.) The so-called crossing cases are proverbially troublesome, for there are comparatively few instances in which the facts and circumstances, considered in connection with the oral testimony, lead so unerringly to a single conclusion as to permit the courts to hold, as matter of law, that contributory negligence has been established. The difficulty in such cases is not with the law, for that is too well settled for discussion, but with the application of the law to a given state of facts.

The case at bar is not free from embarrassment in this respect and that is really the best argument for the plaintiffs that can be made, because it presents the precise case in which

the court cannot assume to decide the question of contributory negligence without usurping the functions of the jury. The facts of this case, fairly stated and considered in the light of the inferences most favorable to the plaintiffs, do not so clearly establish the contributory negligence of plaintiffs' intestate as to remove the question from the domain of doubt into the realm of undebatable fact. In support of this suggestion we have but to refer to the persuasive, if not conclusive, circumstance that learned judges have differed as to the effect of the evidence in this record.

Without referring in detail to the facts, which are fully set forth in the foregoing statement, it is enough to say that this accident occurred in the night time, at a concededly dangerous crossing, under conditions and surroundings to which must be applied the rule of ordinary care in human conduct. This rule is to be measured, not by the great caution of one or the extreme carelessness of another, but according to the standard fixed by the consensus of common sense based upon human experience.

Was the plaintiffs' intestate reasonably and ordinarily careful of his own safety in the circumstances? It cannot be said that intelligent and reasonable men, applying the rule of ordinary care to the facts of this case, could not fairly differ in their answers to this question and, therefore, it is one for the arbitration of a jury and not for the decision of a court.

This is the rule of the cases *Zwack* v. *N. Y., L. E. & W. R. R. Co.* (160 N. Y. 366); *Judson* v. *Central Vermont R. R. Co.* (158 N. Y. 605); *Henavie* v. *N. Y. C. & H. R. R. R. Co.* (166 N. Y. 280); *Thompson* v. *N. Y. C. & H. R. R. R. Co.* (110 N. Y. 636); *Kellogg* v. *N. Y. C. & H. R. R. R. Co.* (79 N. Y. 72) and *Shaw* v. *Jewett* (86 N. Y. 616).

We shall not indulge in a dissertation upon the authorities cited, because, as has been stated, the question is primarily one of applying the particular facts to a well-settled rule of law. There are, however, expressions in several of these cases which so thoroughly fit the facts of the case at bar that we quote them simply to emphasize our conclusions.

In the *Kellogg Case* (*supra*) this court said : " There is considerable evidence in this case of measurements and experiments to show how a train approaching this crossing from the south could be seen from various points on this highway. Such evidence is frequently very reliable and satisfactory, but it is not necessarily conclusive. Such experiments are made when witnesses are calm and their whole minds free from any distractions, much intent upon the matter in hand. There may be a slight change in the intervening obstacles, and the speed of the approaching train is not there."

In the *Shaw Case* (*supra*) error was assigned on the judge's refusal to charge the jury : " That if they believe that the plaintiff could have seen the train, at distance enough from the track to have stopped his horse before reaching the track, his failure to see the train was negligence on his part and he was not entitled to recover." This court held that the refusal to so charge was not error and said : " That is not the rule. The plaintiff is not bound to see ; he is bound to make all reasonable efforts to see that a careful and prudent man would make under like circumstances. He is not to provide against any certain result. He is to make an effort for a result that will give safety ; such effort as caution, care and prudence will dictate."

The judgment of the court below should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., BARTLETT, MARTIN and VANN, JJ., concur ; GRAY, J., not sitting ; HAIGHT, J., absent.

Judgment reversed, etc.