## DELAWARE L. & W. R. CO. v. REBMANN.

(Circuit Court of Appeals, Second Circuit.   October 31, 1922.)

No. 21.

1. **Railroads ⬤301—Duty of vehicle to yield at crossing depends on warning.**

   The railroad company and travelers on the highway have equal rights at a highway grade crossing, and, though vehicles on the highway must yield the right of way, the duty to do so is conditioned on the duty of the train to give warning of its approach.

2. **Death ⬤58(1)—Contributory negligence affirmative defense.**

   Contributory negligence is an affirmative defense, the burden of establishing which is on a railroad company defending an action for wrongful death; Code Civ. Proc. N. Y. § 841-b requiring contributory negligence of the person killed to be pleaded and proved by the defendant.

3. **Railroads ⬤346(5)—A person killed presumed to have exercised care.**

   In an action for the death of a person riding in a motor truck, which collided with a train at a railroad crossing, there is a presumption that the deceased exercised reasonable care for his own safety in approaching the crossing, that he looked down the track as the law required, and this presumption is overcome only where there is direct evidence to the contrary offered by the defendant.

4. **Railroads ⬤350(22)—Contributory negligence of truck passenger held for jury.**

   In an action for the death of a man riding on a motor truck, which was struck by a railroad train at a crossing, evidence that the view along the track in the direction from which the train came was obstructed by a station, and that the engineer of the train did not see the truck until it was too close to the track to have stopped in a place of safety, *held* not to overcome as a matter of law the presumption that deceased exercised due care for his own safety, so that defendant was not entitled to a verdict directed in its favor on the ground of contributory negligence.

5. **Appeal and error ⬤1005(2)—Approved verdict, supported by evidence, not reversed.**

   Where the evidence required submission to the jury of the question of defendant's negligence in failing to give warning of the approach of its train to the crossing, and the trial judge approved the jury's findings, they cannot be reviewed on writ of error.

In Error to the District Court of the United States for the Western District of New York.

Action at law by May Rebmann, as executrix of the last will and testament of Philip Rebmann, deceased, against the Delaware, Lackawanna & Western Railroad Company, to recover damages for the loss of intestate's life. Judgment for plaintiff. Defendant's motion for new trial was overruled (275 Fed. 1009), and defendant brings error. Affirmed.

Locke, Babcock, Spratt & Hollister, of Buffalo, N. Y. (Evan Hollister, of Buffalo, N. Y., of counsel), for plaintiff in error.

Hamilton Ward, of Buffalo, N. Y., for defendant in error.

⬤For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The parties herein will be referred to by the designations used below; i. e., the plaintiff in error will be referred to as the defendant, and the defendant in error as the plaintiff.

Philip Rebmann, plaintiff's intestate, was riding on, but not driving, a motor truck on October 5, 1920, at about 8:15 a. m., and while crossing the defendant's railroad tracks at Loosee highway, at North Darien, N. Y., the motor truck was struck by a west-bound express train and he was instantly killed. The truck was proceeding at about 4 to 5 miles an hour, while the express train was running at 50 miles an hour. The tracks extend east and west, and the motor truck was proceeding from the north to the south. The tracks are straight for a distance of about three-quarters of a mile to the east in the direction from which the train was approaching on the west-bound track, and continue so for about a mile west of the crossing. The North Darien station building, 75 feet long by 25 feet high, was located on the east side of the highway, parallel to and about 15 feet north of the north railing of the west-bound track. One end of the building is 37 feet east of the center of the traveled highway. A bay window projects from the middle of the window toward the track. The station platform on the south and west sides of the building extends out close to the track. There is a siding running from the west-bound track at a point opposite the east end of the station toward the east, and on the north side of and parallel to the two main tracks. At the time of the accident there was a gondola car on this siding, a distance of 550 feet east of the crossing, and a driveway connected this siding with the highway west of it, and extended parallel to the tracks along the north side of the station. The plaintiff's intestate and the driver of the truck were seated on a seat having a canopy top, and drove from the gondola car along this highway to the railroad crossing. In doing this they passed in the back of the station to the highway, which crossed the railroad tracks at right angles.

As soon as the truck had been loaded with stone, it was seen proceeding with plaintiff's intestate seated at the side of the driver going west toward the highway crossing, and before it turned into the highway they were observed by another witness, who said they were going 4 or 5 miles an hour. They were next observed by the brother of the driver, who was killed, coming around the west end of the station, to continue on toward the tracks where they were struck by the train. The driver's brother was driving along Loosee road, and had reached a point about a quarter of a mile south of the crossing when he stopped to look at his gasoline supply. He then observed the train approaching from the east, and said he saw the automobile truck before the collision, just after it pulled around the corner of the depot and went across the tracks. He said he did not know whether the truck stopped or kept on, but after it turned the corner it was coming toward the witness, and that it was then at a point about 70 feet from the crossing. The engineer testified that as he approached the crossing he saw the front of the automobile when it was 8 or 10 feet from the track and

it was going slowly. There was testimony offered on behalf of the plaintiff that the bell was not rung or whistle sounded for the crossing. There was testimony that from observations made, looking toward the east from the highway to see the extent of the view looking in that direction, and at a distance half way between two crossings, the view to the east was obstructed "by the car, a tree, and the station." One witness testified as follows:

"Q. And, as you looked east there from the highway what is it that stops your view at the Holmes crossing? Is there a curve there? A. A cut and also a curve."

Another witness testified that at a point 20 feet back you could see 195 feet looking east; at 30 feet back you could see 116 feet; and at a point 50 feet back, 96 feet. The inability to see farther was due to the obstruction caused by the station. It is thus apparent that it was necessary for the traveler to rely upon a warning for the crossing rather than sight in making progress. It also appears that the hood and front of the truck projected 6 or 7 feet ahead of where the driver sat, so that the occupant's view looking east must be considered accordingly. It is largely speculative to determine just where the engine was when it was visible to the deceased. We must not depend altogether upon the testimony of the engineer as to this. His testimony, according to his calculations, would indicate that at the rate of speed the train was going—even if the deceased saw the engine when he was 30 feet way—the train would have passed before the motor truck reached the track; and it further appears that the engineer, who had an opportunity to see equal to that of the deceased, did not observe the deceased and the motor truck until it was within 8 or 10 feet of the track, and the train was then about 200 or 300 feet away.

It is contended, however, that because of the physical circumstances and the testimony of the engineer, if the deceased had looked, he would have seen the danger. But there is testimony that, before passing around the station, and in driving from the railroad car to the station, the view over at least half of this route was obstructed, and that the engine first came in sight at the Holmes crossing, three-fourths of a mile away. If running at 50 miles an hour, it would cover this distance in less than a minute. Whether or not it was within the view of the deceased before he rounded the corner of the station must be determined as a question of fact; it is uncertain and there is no proof that it was within his view. Therefore the claim that, if the deceased had looked back while traveling around the north side of the station and before driving around the west end of it onto the highway, he would have had an open and unobstructed view of the train, is not supported by uncontradicted testimony. The issue as to this was for the jury. Another element must also weigh in favor of the deceased. It appears that from the time the train came in sight after passing the whistling post, and for about three-quarters of a mile, no steam came from the engine and it had been shut off and was coasting. There was ample evidence to support the finding that no whistle was blown nor bell rung. .

Upon these facts, we think that the question of contributory negligence on the part of the deceased was one of fact for the jury. Under section 841-b of the New York Code of Civil Procedure it is provided that:

"On the trial of any action to recover damages for causing death the contributory negligence of the person killed shall be a defense, to be pleaded and proven by the defendant."

[1] In Continental Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403, the rule that should measure the conduct of the deceased and the railroad company's engineer was early established. There the court said:

"If a railroad crosses a common road on the same level, those traveling on either have a legal right to pass over the point of crossing, and to require due care on the part of those traveling on the other, to avoid a collision. Of course, these mutual rights have respect to other relative rights subsisting between the parties. From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first; it is the duty of the wagon to wait for the train. The train has the preference and right of way. But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way. Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on many circumstances. It cannot be such, if the speed of the train be so great as to render it unavailing. * * *

"On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. They have, indeed, the greatest incentives to caution, for their lives are in imminent danger if collision happen; and hence it will not be presumed, without evidence, that they do not exercise proper care in a particular case. But, notwithstanding the hazard, the infirmity of the human mind in ordinary men is such that they often do manifest a degree of negligence and temerity entirely inconsistent with the care and prudence which is required of them, such, namely, as an ordinarily prudent man would exercise under the circumstances. When such is the case, they cannot obtain reparation for their injuries, even though the railroad company be in fault. They are the authors of their own misfortune. These propositions are so indisputable, that they need no reference to authorities to support them. We think the judge was perfectly right, therefore, in holding that the obligations, rights and duties of railroads and travelers upon intersecting highways are mutual and reciprocal, and that no greater degree of care is required of the one than of the other. For, conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties. The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with and conditioned upon the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition. Both parties are charged with the mutual duty of keeping a careful lookout for danger, and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty. The charge of the judge was in substantial accordance with these views. The mistake of the defendant's counsel consists in seeking to impose upon the wagon too exclusively the duty of avoiding collision, and to relieve the train too entirely from responsibility in the matter. Railway companies cannot expect this immunity so long as their tracks cross the highways of the country upon the same level. The people have the same right to travel on the ordinary highways as the railway companies have to run trains on the railroads."

And later in Flannelly v. Delaware & Hudson Co., 225 U. S. 597, 32 Sup. Ct. 783, 56 L. Ed. 1221, 44 L. R. A. (N. S.) 154, it was reaffirmed, and that court said:

"The law requires of one going upon or over a railroad crossing the exercise of such care for his own protection as a reasonably prudent person ordinarily would take in the same or like circumstances, including the use of his faculties of sight and hearing. And, generally speaking, whether such care has been exercised is a question of fact for the jury, especially if the evidence be conflicting or such that different inferences reasonably may be drawn from it."

And the New York Court of Appeals in Smith v. New York Central, 177 N. Y. 224, 69 N. E. 427, said:

"The so-called crossing cases are proverbially troublesome, for there are comparatively few instances in which the facts and circumstances, considered in connection with the oral testimony will lead so unerringly to a single conclusion as to permit the courts to hold, as matter of law, that contributory negligence has been established. The difficulty in such cases is not with the law, for that is too well settled for discussion, but with the application of the law to a given state of facts. * * * Was the plaintiffs' intestate reasonably and ordinarily careful of his own safety in the circumstances? It cannot be said that intelligent and reasonable men, applying the rule of ordinary care to the facts of this case, could not fairly differ in their answers to this question, and therefore it is one for the arbitration of a jury, and not for the decision of a court."

[2] Contributory negligence is an affirmative defense, and the burden of establishing it rests upon the defendant. O'Hara v. Central R. R. of New Jersey, 183 Fed. 739, 106 C. C. A. 177.

[3] There is a presumption, in support of the plaintiff's cause of action, that the deceased exercised reasonable care for his own safety in approaching the highway, that he looked down the track, using his faculties as the law required, and it is only where there is direct evidence offered by the defendant, because it bears the burden, that he did not exercise such care, that this presumption is overcome. Castle v. Director General of Railroads, 232 N. Y. 430, 134 N. E. 334.

In Baltimore & Potomac R. R. Co. v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262, the Supreme Court said:

"There was no error in instructing the jury that in the absence of evidence to the contrary, there was a presumption that the deceased stopped, looked, and listened. The law was so declared in Texas & Pacific Ry. Co. v. Gentry, 163 U. S. 353, 366. The case was a natural extension of prior cases. The presumption is founded on a law of nature. We know of no more universal instinct than that of self-preservation—none that so insistently urges to care against injury. It has its motives to exercise in the fear of pain, maiming and death. There are few presumptions, based on human feelings or experience, that have surer foundation than that expressed in the instruction objected to."

[4] There is testimony by the engineer that:

"When I first saw him come toward the track, he was not looking at all in my direction that I could see."

But the engineer claims he saw neither the truck nor the driver until the truck was about 8 or 10 feet from the track, and then saw only the one person whom he thought was the driver. What the deceased or the driver should have done in this emergency was not a question

of law for the court, and if we test the conduct of the driver by the use made by the engineer of his faculties of sight and hearing, we cannot say that the deceased was guilty of contributory negligence as a matter of law. With these obstructions to view, it may well be said as a matter of fact, that the deceased's view was obstructed similarly to that of the engineer. The jury may well have said that the deceased's view was obstructed more than the engineer's by reason of the varying positions he was in as the truck passed along. Many cases in the New York courts, which, in the earlier days, put the burden of proof upon the plaintiff—even in the early death cases—to prove freedom from contributory negligence, which are relied upon by the defendant, are not applicable. We conclude that the defendant did not meet the burden of proof of establishing affirmatively contributory negligence on the part of the plaintiff's intestate.

[5] The evidence required the submission to the jury of the question of defendant's negligence in failing to give warning of the approach of the train at the crossing. After due consideration, the trial judge approved the jury's findings. We have no power to review those determinations. The charge of the learned District Judge was as favorable to the defendant as it could expect. With eminent fairness and after a correct statement of the law, the issues of fact were found against the defendant, and the judgment must therefore be affirmed.